LAW *v.* LOUISVILLE & N. R. Co.

(*Nashville*, December Term, 1942.)

Opinion filed April 3, 1943.

Joseph Martin, William J. Rains, Corynne Brazzell, and R. H. Brazzell, all of Nashville (Martin & Cochran, of Nashville, of counsel), for Henry C. Law.

J. C. Edwards, Seay, Stockell & Edwards, and Seth M. Walker, all of Nashville, for Louisville & N. R. Co.

Mr. Justice Prewitt delivered the opinion of the Court.

This suit originated in Sumner County and resulted from the death of plaintiff's son and intestate, William Henry Law, alleged to have been killed by the Railroad Company's failure to observe Code, section 2628(4), which section requires every railroad to keep someone on the engine always on the lookout ahead; and when any person, animal, or other obstruction appears upon the track, to sound the alarm whistle, put down the

brakes, and employ every reasonable means to stop the train and prevent an accident.

The deceased's body was found on the morning of July 3, 1940, near the track at a point between Portland and Gallatin. This point was about seven miles north of Gallatin.

The trial judge sustained a motion for a directed verdict at the close of the plaintiff's proof and dismissed the suit. On appeal, the Court of Appeals reversed the judgment of the circuit court and remanded the case for a new trial. Petition for *certiorari* filed by the Railroad Company has been granted and the case argued at the bar of this Court.

The only question in the case is whether there was sufficient evidence, circumstantial or otherwise, to carry the case to the jury. There were no eyewitnesses and the evidence was wholly circumstantial.

The Court of Appeals found the circumstances as follows:

"He (deceased) was a boy, 18 years of age, intelligent, in all respects normal, of good reputation, and did not drink intoxicating liquors. He lived at South Tunnel, Sumner County, Tennessee, in his father's home, which was near defendant's railroad and about a mile south of where his body was found. On the night of July 2, 1940, he called on his sweetheart, Miss Cora Bush, at her home, which was about two miles north of his home and some distance (not clearly shown) west of the railroad. He wore a blue and white striped shirt, brown trousers, and his best 'Sunday' shoes. He remained at Miss Bush's home from about 8 p.m. until about 11:30 p.m., talking with her, her mother, and others, playing a guitar, and was cheerful and happy. It was a rainy, stormy night,

the wind was making a loud noise through the trees. For this reason Miss Bush's mother invited him to stay overnight, but he declined, and left to go home about 11:30. Miss Bush went out on the porch with him, and saw him start home, carrying a lighted flashlight, walking along a path which led from her home across a field to the road to South Tunnel. This, so far as appears, was the last time anyone saw him alive.

"On the way to his home, and about a mile from Miss Bush's home, this road passed from the west to the east side of the railroad, going through a creek beneath the railroad bridge, continued south along the east side of the railroad right of way, and followed the course of the railroad to South Tunnel, winding back and forth across the railroad two or three times on the way to that place. On the west side of the railroad and just before this road entered the creek under the railroad bridge, there was a well-defined gravel path, about ten paces in length, which led from the road up the embankment to the railroad track at the north approach of the railroad bridge.

"Plaintiff's theory is that the deceased was on his way home and when he came to this gravel path, instead of following the road on through the creek, he took this path up the embankment to the railroad track, walked south on the railroad bridge across the creek; and that, while so walking on the bridge or the track just south of the bridge, he was overtaken, struck and killed by a southbound train of defendant."

The railroad ran north and south and was level and straight for more than a mile in both directions. On the roadbed there was ballast or crushed stone between the crossties and about flush with the top of them. The

railroad bridge was 88 feet long and was so constructed that pedestrians could use it for a walkway, but it was so narrow that one could not use it without being struck by a train crossing it.

Miss Bush testified that the shortest and most logical way for a person to walk from her home to South Tunnel was over the path from her home to the road, down the road to the path leading up the embankment to the railroad, thence across the railroad bridge and down the track to South Tunnel; and that on former occasions she had walked this way with the deceased to the railroad bridge.

The deceased left the home of Miss Bush about 11:30 P. M. and about twenty minutes later a southbound train, running several hours late, passed over the railroad bridge and the place where deceased was found next morning. This train was known as "Second 59" and consisted of an engine, tender, freight cars, and caboose.

The next morning deceased was found about 300 feet south of the railroad bridge, the body was laying face down on the east side of the track, some 6 or 8 feet from the roadbed. The head was pointing south and the feet north. A comb and a sack of smoking tobacco were found near the body. About 75 feet north of the body and between the rails there was blood, hair, parts of skull bone and brains, which were strewn south along the east rail, the ballast and the ties to where the body was lying. The shoes of the deceased had no mud on them. His shirt and trousers were badly torn on the right and in the rear. His wounds were a big gash on the top of his head, cuts on the left side of his nose and on his neck back of the right ear, face badly bruised, chin bone broken, right arm broken at elbow, cuts on both

knees, right leg broken, collarbone broken on the right side, right shoulder broken, and right hip broken.

The Court of Appeals held that the jury could have reasonably inferred from these facts and circumstances that the boy did appear upon the track as an obstruction in front of the train and was killed by it. That Court stated that deceased was on his way home, and it seemed highly probable—so much so as to be reasonably certain—that instead of following the road on through the creek, he followed the gravel path up the north end of the railroad bridge across the stream south toward the point where the body was found. The Court of Appeals reasoned that it was natural to conclude that the deceased followed the usual way, and that from the circumstances it could be inferred that on this fatal night deceased was alive upon the track of the Railroad Company so as to become an obstruction; and that, therefore, it was the duty of the Railroad Company to prove, if such were the case, that it observed the statutory precautions as set out in section 2628(4) of the Code.

In *Meador* v. *Nashville, C. & St. L. Ry.*, 177 Tenn., 273, 148 S. W. (2d), 371, 373, it appears that the deceased was seventy-one years of age, and that he lived in an easterly direction from Chattanooga on the Jenkins Road at a distance of thirteen miles. He was drawing an old-age pension of $18.50 per month. His wife had been confined to her bed with a broken hip since April 16, 1939. He had worried a great deal over his wife's condition, and it was telling on him and he had become absent-minded. On Friday, October 27, 1939, plaintiff asked deceased to go to Chattanooga and place an advertisement in the paper for a house, but he declined to go. The request was repeated the next day with the

same result. That night deceased asked his son for his best pants, but for what purpose no one knows. Deceased went to bed that night, but got up and slipped off without saying anything to anyone. It does not appear whether or not he put on his best pants. About midnight, Herbert McDaris, a neighbor, while driving his automobile to Chattanooga, observed deceased standing on the side of the road facing it. McDaris observed a walking cane in his hand but could not tell which way he was traveling. He was about two miles west of his home on the Jenkins Road and three miles from where the Brainard Road crosses the viaduct over defendant's railroad. McDaris was the last person who saw the deceased alive. The most direct route from the home of the deceased, and the one usually traveled, was over the Jenkins Road until it intersects with the Brainard Road and then over the railroad across said viaduct to Chattanooga. The distance from the Brainard viaduct to Chattanooga is about eight miles, and one-half mile north of said viaduct the Lee Highway viaduct crosses defendant's railroad. To get from the Brainard viaduct down to the track one has to descend a 28-foot embankment. The railroad track between these two viaducts is heavy ballast, which makes walking on the track or crossties difficult. The ballast extended two feet beyond the crossties, and there was no path on either side of the track, but it appears that several feet from the end of the crossties the ground is smooth and is good for walking. The body of the deceased was discovered about noon the next day on the track about halfway between these two viaducts. The cane of the deceased was found first on the side of the track, then the cap, and next his head, all on the east side. The body was fifty feet down

the track, having been dragged that distance between the rails.

In the Meador case this Court quotes from the opinion of the Court of Appeals as follows:

"The fact that the dead body was found between the rails, having been dragged along the track, without other evidential facts, raises no presumption that he was an obstruction while alive upon the track and was killed by the train."

The petitioner Railroad Company insists that the instant case is controlled by the Meador case. It is true that there are many facts in the Meador case quite similar to the present case, but it will be observed that in that case the deceased was seventy-one years of age, had worried a great deal over his wife's condition, and had become absent-minded. On the night that it is insisted he was killed by the Railway Company he had wandered away from home, and it could have been well concluded that he did not appear as an obstruction on the track alive at the time he was struck.

It is true that a verdict cannot be based on speculation, surmise or conjecture. *Buckeye Cotton Oil Co.* v. *Campagna,* 146 Tenn., 389, 242 S. W., 646; *De Glopper* v. *Railway & Light Co.,* 123 Tenn., 633, 134 S. W., 609, 33 L. R. A. (N. S.), 913. In the last-cited case the Court held that the act which caused the injury and the negligence of the defendant in relation to the act cannot be inferred from the accident itself.

In *Knoxville* v. *Wyrick,* 99 Tenn., 500, 42 S. W., 434, and similar cases recoveries were sustained, but in all those cases the deceased persons were seen upon the track before being struck, and upon the logic of presumption that they continued upon the track, it was held that where

it appeared that death had resulted from being struck by the train the plaintiffs had carried the burden of showing that their intestates appeared as obstructions.

We are of opinion, in the present case, upon all the facts and circumstances surrounding the death of the young man a presumption arose that he did appear upon the track as an obstruction and that this presumption prevailed until countervailing evidence was introduced. No such evidence having been introduced, the trial judge was in error in granting the motion for a directed verdict.

It results that the judgment of the Court of Appeals reversing the trial court in granting the motion for a directed verdict was correct.

The judgment of the Court of Appeals is therefore affirmed.

GREEN, C. J., and CHAMBLISS, J., concur.

DeHAVEN and NEIL, JJ., dissent.

MR. JUSTICE CHAMBLISS delivered the following concurring opinion:

When a dead body is found beside the railway track so broken and mangled as to be fairly convincing that the deceased was killed by a passing train, and particularly if the rails or ties show blood, or other remains of the body, I understand the rule to be that proof that the deceased had been seen walking along the roadbed before a train passed, at a point reasonably near where the body is found, is sufficient to constitute *prima facie* evidence, subject to rebuttal, that the deceased was an obstruction on the track within the liability provisions of our statute. In all our cases following this rule, so far

as I am advised, this proof has been by direct evidence of eye witnesses.

The instant case is somewhat unique, in that reliance is upon circumstantial evidence only to prove that the deceased was upon the track ahead of the train when fatally injured.

The first question, therefore, I have considered is whether or not this rule should be applied when this essential fact is proven by circumstantial evidence only.

The general rule, applicable to both civil and criminal cases, is that any material fact may be established by either direct or circumstantial evidence. As said in 20 Am. Jur., p. 258, citing numerous decisions: "The competency of circumstantial evidence is not open to question, provided it is the best evidence which the nature of the case admits," and it is "sometimes as cogent and irresistible as direct and positive testimony." Proof is given of facts and circumstances from which the jury may infer other connected facts which reasonably follow, according to the "common experience of mankind." *Webb* v. *State,* 140 Tenn., 205, 203 S. W., 955, 15 A. L. R., 1034.

As well expressed in *Watkins* v. *Prudential Ins. Co.,* 315 Pa., 497, 173 A., 644, 651, 95 A. L. R., 869, "any evidence, whether direct or circumstantial, that tends to prove the operative facts, is admissible. . . . Causes of action are always set forth affirmatively and if they are to prevail they must be supported either (1) by facts tending to prove directly the cause of action pleaded or (2) by legitimate inferences from circumstances which have met the tests of admissibility." In Greenleaf on Evidence (15 Ed.), sec. 13, this is said: "In civil cases it is sufficient if the evidence on the whole agrees with

and supports the hypothesis which it is adduced to prove. . . . In both cases [civil and criminal] *the verdict may well be founded on circumstances alone,* and these often lead to a conclusion more satisfactory than direct evidence.'' (Italics supplied.) In *Mars* v. *Philadelphia R. T. Co.,* 303 Pa., 80, 154 A., 290, 292, it was said that where ''a fact is deducible as a reasonable inference from the facts and conditions directly proved, and it cannot justly be classed as a mere conjecture or surmise or guess.''

In *Com.* v. *Jefferies,* 7 Allen (Mass.), 548,. at page 563, 83 Am. Dec., 712, Chief Justice BIGELOW said: ''The process of ascertaining one fact from the existence of another is essential to the investigation of truth, and prevails in courts of law as well as in the ordinary affairs of life,'' a like thought being thus expressed in other language by Wigmore, ''The conclusions and tests of every day experience must constantly control the standards of legal logic.'' Wig. Ev., Volume 1, sec. 27, page 232.

But counsel for petitioner railroad urge that, if the proof may be supplied by circumstantial evidence, that evidence is subject to the limitation universally recognized in criminal cases, that the proven circumstances must exclude every other reasonable hypothesis than that of guilt. Counsel cite *Meador* v. *Nashville, etc., Ry.,* 177 Tenn., 273, 279, 148 S. W. (2d), 371, the unreported case of *Nashville, C. & St. L. Ry.* v. *Tunnell,* White Law (quoted from in the Meador case), and *Nashville, etc., Ry.* v. *Sutton,* 21 Tenn. App., 31, 35, 46, 104 S. W. (2d), 834.

The opinion in the Meador case quotes with approval

the following from Jones, The Law of Evidence (3 Ed.), sec. 899:

"A theory cannot be said to be established by circumstantial evidence either in a civil or a criminal case, unless the facts and circumstances shown are not only consistent with such theory, but absolutely inconsistent with any other rational theory." (177 Tenn., 273, 148 S. W. (2d), 374.)

Whether or not this is the law, is of special importance in the instant case, in view of the following statement in the opinion of the Court of Appeals:

"It is . . . true that the circumstances here do not exclude the possibility that the accident might have happened in some other way, and do not exclude every hypothesis other than that the boy was an obstruction on the track."

The learned writer of this opinion of the Court of Appeals, Presiding Judge FELTS, then says that this statement quoted from Jones is, "contrary to earlier and later decisions of the Supreme Court that it is sufficient in a civil case depending on circumstantial evidence, for the party having the burden of proof to make out the more probable hypothesis, and the evidence need not arise to that degree of certainty which will exclude every other reasonable conclusion."

He then refers to holdings of this Court in *Knights of Pythias* v. *Steele,* 107 Tenn., 1, 63 S. W., 1126; *Ballinger* v. *Mutual Life Ins. Co.,* 167 Tenn., 367, 69 S. W. (2d), 1090; *Bryan* v. *Aetna Life Ins. Co.,* 174 Tenn., 602, 130 S. W. (2d), 85, and *New York Life Ins. Co.* v. *Nashville Trust Co.,* 178 Tenn., 437, 159 S. W. (2d), 81, 86; also several Tenn. App. cases. This statement, directly in

point, is quoted from the opinion in the Bryan case by Chief Justice GREEN [174 Tenn., 602, 130 S. W. (2d), 88]:

"The general rule is that it is sufficient, in a civil case depending on circumstantial evidence, for the party having the burden of proof to make out the more probable hypothesis and the evidence need not arise to that degree of certainty which will not exclude every other reasonable conclusion. 23 C. J. 49; Jones, Com. on Evidence (2 Ed.), Vol. 1, sec. 12."

And from *New York Life Ins. Co. v. Nashville Trust Co., supra* [178 Tenn., 437, 159 S. W. (2d), 86], is quoted this approval of the rule that the decision may be arrived at by balancing the "probabilities" in a civil circumstantial evidence case:

"The evidence being circumstantial, were the jury justified in concluding that death of the insured prior to March 8, 1933, was a more probable hypothesis than his continued existence after said date? Can we say that the finding of the jury was based on conjecture rather than upon the balance of probabilities? Should we sustain the motion for a directed verdict? We think not."

Of course, these cases recognize that there must be a preponderance of the evidence, that the "probalities" must be greater, one way or the other, the circumstances in favor of one party must outweigh those in favor of the other, in order to justify a finding in favor of either. Where the inferences to be drawn are equally plausible in favor of both of two conflicting theories, no deduction in favor of either may be drawn.

Not only are these decisions of this Court contrary to the rule quoted in the Meador case from Jones Law of Evidence, but I find that of the six cases cited by this writer to sustain this text three are criminal cases, and

none of the others support the statement in so far as it extends the limitation applicable in criminal cases to civil cases. However, an analysis of these cases is not necessary, since I find that the quoted statement was later repudiated by its author.

In his larger and more comprehensive and later work, Jones Commentaries on Evidence, Volume I, sec. 12, pp. 23, 24, cited by Chief Justice GREEN in his opinion in *Bryan* v. *Aetna Ins. Co., supra,* he said:

"In civil cases, it suffices that the evidence, whether direct or circumstantial, creates a preponderance of the proof. In a civil case, circumstantial evidence need not exclude every reasonable conclusion other than that arrived at by the jury."

He then adds, "but . . . as the rule in criminal cases is sometimes stated, the circumstances proved must be susceptible of explanation upon no reasonable hypothesis consistent with the innocence of the accused."

A full note discussing certain language used in some cases concludes with the following:

"In a civil case to warrant recovery on circumstantial evidence, the evidence must 'outweigh' other hypotheses than the one contended for in the sense that evidence sustaining the hypothesis contended for must preponderate as against the others, but it need not 'exclude' them in the sense of conclusive demonstration of impossibility."

Also, in an annotation in 97 Am. St. Rep., at page 802, I find this:

"The rule of criminal law that where circumstantial evidence is submitted, the facts proven must be such as to preclude every other hypothesis but the guilt of the accused does not apply in civil cases, *Rippey* v. *Miller,*

46 N. C., 479, 62 Am. Dec., 177; and proof of circumstances warranting a given inference is sufficient in such cases. *Albrecht* v. *C. C. Foster Lumber Co.*, 126 Ind., 318, 26 N. E., 157; *Louisville, etc., R. Co.* v. *Balch*, 122 Ind., 583, 23 N. E., 1142.''

This, as has been seen, is, in substance, the holding of this Court in our cases above mentioned.

This being the law of evidence governing the instant case, I find little difficulty in concurring with the Court of Appeals that the proven circumstances decidedly favor the probability that the deceased was an obstruction on the track of the defendant railroad when he met his death as a result of coming in contact with its train. It is unnecessary to restate the facts fully set forth in the opinion of the Court of Appeals and that prepared by Mr. Justice PREWITT. However, I add this:

As I view it, the determinative question of fact is this: When this young man on his way home reached the point where his road ran under the railway bridge and thru this swollen creek, did he follow the road, or use the bridge? Is it not more probable, more reasonable, to conclude that he climbed the gravel pathway to the railway track and crossed on this bridge, than that he waded thru the creek and proceeded along this muddy road? If so, he was walking along the track near where his remains were found at about the time a train going south passed. The proof of this, though circumstantial, must be given the same effect as if there had been direct testimony that he was ''*seen* upon the track before struck.''

The opinion in the Meador case recognizes that our cases sustain recoveries where the deceased was ''*seen* upon the track before struck.'' That opinion followed

and quoted freely from *Nashville, C. & St. L. Ry.* v. *Sutton*, 21 Tenn. App., 31, 104 S. W. (2d), 834 (*certiorari* denied) and *N., C. & St. L. Ry.* v. *Tunnell*, White Law (unreported). The point is stressed that in neither of these cases, nor in the Meador case, was there evidence that the deceased was on the railroad track before being struck. In the opinion in the Tunnell case, quoted with approval in the Meador case, it was said that, "in *Knoxville, C., G. & L. Railroad Co.* v. *Wyrick*, 99 Tenn., 500, 42 S. W., 434, and similar cases, . . . the deceased persons were seen upon the track before struck, and upon the rule of presumption that they continued upon the track it was held that where it appeared that death had resulted from being struck by the train the plaintiffs had carried the burden of showing that their intestates appeared as obstructions. But this rule of presumption does not obtain in the instant case *for the reason that there is no evidence that the deceased was* seen upon the track, or anywhere near thereto." (Italics supplied.) While in the instant case there is no testimony that the deceased was *seen* upon the track, there is circumstantial evidence of high probative value that he was "upon the track," which is the material fact. I find no conflict with the decision in the Meador case. As shown above, there was no evidence in that case, either direct or circumstantial, as there is in the case before us, that the deceased was on the railroad track at any time before he was struck. We disapprove only the expression above quoted, probably by inadvertence, from Jones on Evidence extending to civil cases the limitation which applies in criminal cases to circumstantial evidence.

Since there was competent and material evidence to support the theory of the plaintiff, I concur with Mr.

Justice PREWITT and the Court of Appeals that the trial Judge erred in granting a directed verdict for the defendant.

The CHIEF JUSTICE and MR. JUSTICE PREWITT concur in the concurring opinion of MR. JUSTICE CHAMBLISS.

MR. JUSTICE DEHAVEN delivered the following dissenting opinion.

The body of plaintiff's decedent was found in a badly mutilated condition in a ditch several feet east of the ties of defendant's tracks. About seventy-five feet north of where the body was found there were bits of blood and flesh on the east rail and east end of the ties of the track, about two hundred and twenty-five to two hundred and fifty feet from the south end of a railroad trestle. The body was found at about 10 o'clock on the morning of July 3, 1940.

On the evening of July 2nd, deceased called on a young lady who lived about two miles north of his own home at South Tunnell, Tennessee, remaining there until about 11:30 P. M. It was raining and the night was blustery. When deceased left the home of the young lady he had his lighted flashlight in his hand and he walked away down a path which led easterly across a field and connected with a road which ran north and south. This road if followed to the south, leads to a point where it crosses through a creek under the railroad trestle at Buck Lodge, Tennessee. If followed to the north, this road leads to a point where it crosses defendant's tracks much further away from the home of deceased. The distance from where the path from the home of the young lady enters the road to the railroad trestle over the creek is about one mile. From the time deceased went down this path he was not seen alive by anyone. There

is a complete hiatus in the proof as to the movements of the deceased after 11:30 o'clock on the night of July 2nd. What he did, which way he went, after that hour is a matter of pure conjecture and speculation. From the location and condition of his body, when found, and from the blood and flesh on the east rail and east end of the cross-ties of the track, it appears the body was struck by a train. From these facts alone, plaintiff seeks to draw the conclusion that deceased appeared alive as an obstruction upon the railroad or within the sweep of a train. Upon this hypothesis, plaintiff invokes the railroad precautions statute, Code, sec. 2628 (4).

Before Code, sec. 2628(4) becomes applicable in a given case, the plaintiff must first establish that the deceased, or injured party, appeared alive as an obstruction on the track in front of the moving train, or so near thereto as to be struck by the train. Unless, therefore, deceased appeared as an obstruction upon the road the duty of the engine men cannot be tested by sub-section (4). *Gaines* v. *Tennessee Cent. Ry.,* 175 Tenn., 389, 393, 135 S. W. (2d), 441.

The theory of plaintiff is that the deceased went south on the road above referred to and when he reached the point where the creek flowed over the road, he ascended a path up the railroad embankment and crossed the railroad trestle and while walking along the track was struck by a moving train. This theory rests upon mere conjecture, surmise and possibilities. I think this case is governed by *Meador* v. *Nashville, C. & St. L. Ry.,* 177 Tenn., 273, 148 S. W. (2d), 371, and the authorities therein cited.

For the reasons stated I am constrained to dissent from the decision of the case.

NEIL, J., concurs.