# DAVIS et al. v. METROPOLITAN LIFE INS. CO. —181 S. W. (2d), 9.

Middle Section. January 22, 1944.

Petition for Certiorari denied by Supreme Court, May 6, 1944.

Petition for Rehearing denied by Supreme Court, June 10, 1944.

326

Wm. M. Greene, of Nashville, for plaintiffs in error.

Moore & Ewing, of Nashville, for defendant in error.

HOWELL, J. The two suits were brought by Emma Davis and Carrie Davis, widow and stepmother respectively, of Tanzy Davis, deceased, against the defendant Insurance Company to recover additional accidental death benefits upon two policies issued by the Company. The principal sums had been paid and the additional indemnity claimed by the widow amounted to $345.00 and by the stepmother $113.00. The cases were tried together in the General Sessions Court and then appealed to the Circuit Court of Davidson County, where they were tried by the Court and a jury.

At the conclusion of the plaintiffs' proof the defendant made a motion for peremptory instruction which was denied by the trial Judge who said:

"Well, it is a pretty close case. However, I guess the plaintiff is entitled to have the jury pass on it, and for that reason I am going to overrule the motion."

At the close of all the proof this motion was renewed and was also overruled.

The jury found in favor of the plaintiffs and judgments were entered for the amounts sued for.

The defendant's motion for a new trial and its motion for a directed verdict were then sustained and the suits dismissed.

Proper motions by the plaintiffs to set aside the order vacating the judgments were overruled by the Court and plaintiffs have appealed in error to this Court and have assigned errors all of which are directed at the action of the trial Judge in granting defendant's motion to vacate the judgments and dismiss the suits.

Under these circumstances the question for determination here is whether or not there was sufficient evidence upon which the verdict of the jury could be based.

The law upon the subject of the granting of motions for peremptory instructions by a trial Judge is well settled. In Vol. 15 of Michie's Digest on page 351 citing many cases, it is said:

"There can be no constitutional exercise of the power to direct a verdict in any case in which there is a dispute as to any material evidence or any legal doubt as to the conclusion to be drawn from the whole evidence, upon the issues to be tried."

In the case of Jackson v. Texas Co., 10 Tenn. App., 235; on page 245, Crownover, J., sets out the cases in which a verdict should be directed as follows:

"Where the case involves only questions of law; where but one reasonable conclusion can be drawn from the proof adduced; where there is no disputed evidence on the material points; where, although the evidence is conflicting on minor matters, a conceded fact shows that the evidence on one side cannot be true; or, where by giving to the opposite party the benefit of the most favorable view of the evidence the verdict against him is demanded, a verdict should be directed. 38 Cyc., 1565-1567; [Nashville, C. & St. L.] Railroad v. Justice, 5 Tenn. Civ. App. (5 Hig.), 69."

The record discloses that there was evidence to the effect that the deceased Tanzy Davis was about thirty

years of age, was in good health, had no physical defects and worked regularly; that occasionally he would get drunk and that before his death he always went home when drinking and had never stayed away from his home all night; that he worked at a local hotel and on the night of August 5, 1942, he and a boy with whom he worked, left the hotel together between 7 and 8 o'clock and went to a place on Cedar Street where beer was sold, and after arriving there Tanzy, with some of his friends, got drunk; that they called a taxicab and Tanzy with two of his boy friends and one girl got in the cab and were driven to a house on Overton Street where another man got in the car with them; that some little distance from there two of the boys helped Tanzy out of the cab and took him down an alley where he was found dead the next morning. At least two of the friends with the deceased on this night were characters known to the police and were ex-convicts. The girl friend who was along with them was afterwards found guilty of having stolen Tanzy's pocketbook and sentenced to 90 days in the workhouse.

The body of the deceased was taken to an undertaking establishment in an ambulance and there was evidence that there was a cut or bruise on his forehead, between his eyes, about an inch long, that his neck was swollen, that this scar looked like it was a fresh cut and was not there before the night in question and that it looked like he had been "hit a blow."

The doctor who was requested by the office of the Attorney General of the County to examine the body did so after it was embalmed, and reported that the cause of death was unknown and he also testified at the trial to the same effect. He did find a small abrasion just above the eyebrows and did not find any other bruises

or abrasions on the body after a thorough and careful examination.

There was much testimony by Doctors as to the probability of the injury appearing on the deceased's forehead being sufficient to have caused his death and some difference of opinion among these doctor witnesses.

■ We will not go into details as to the evidence of these witnesses. We have carefully read and reread the testimony and are constrained to the conclusion that the question whether or not the deceased met his death through external, violent and accidental means was one for the jury in this case. No witness testified what caused Tanzy's death. All the facts and circumstances surrounding the movements of the deceased on the night of August 5, 1942, and the finding of his body in the alley the next morning and the postmortem examination of the body and expert testimony of Doctors was before the jury and we think this is peculiarly a case in which the jury should determine whether or not the deceased died a natural death or was killed by violent, external and accidental means.

Much is said in the briefs and argument about permitting the jury to speculate or draw inferences as to the cause of the death of the insured. As has been said above a verdict should not be directed where there is any dispute as to material evidence or any legal doubt as to conclusions to be drawn from all the evidence.

■ It is true that a verdict cannot be based upon speculation, surmise or conjecture. Law v. L. & N. R. R. Co., 179 Tenn., 687, 170 S. W. (2d), 360, 363, and many other cases. Most of these cases involve questions of negligence and negligence cannot be inferred from the fact that there was an accident. In this case the question is not one of negligence but of fact as to whether the

deceased met his death by reason of natural causes or by external, violent and accidental means and the evidence is circumstantial. As said by Mr. Justice Chambliss in his concurring opinion in the Law case, supra:

"The general rule, applicable to both civil and criminal cases, is that any material fact may be established by either direct or circumstantial evidence. As said in 20 Am. Jur., p. 258, citing numerous decisions: 'The competency of circumstantial evidence is not open to question, provided it is the best evidence which the nature of the case admits,' and it is 'sometimes as cogent and irresistible as direct and positive testimony.' Proof is given of facts and circumstances from which the jury may infer other connected facts which reasonably follow, according to the 'common experience of mankind.' Webb v. State, 140 Tenn., 205, 203 S. W., 955, 15 A. L. R., 1034.

"As well expressed in Watkins v. Prudential Ins. Co., 315 Pa., 497, 173 A., 644, 651, 95 A. L. R., 869, 'Any evidence, whether direct or circumstantial, that tends to prove the operative facts, is admissible . . . Causes of action are always set forth affirmatively and if they are to prevail they must be supported either (1) by facts tending to prove directly the cause of action pleaded or (2) by legitimate inferences from circumstances which have met the tests of admissibility.' In Greenleaf on Evidence (15th Ed.), sec. 13, this is said: 'In civil cases it is sufficient if the evidence on the whole agrees with and supports the hypothesis which it is adduced to prove. . . . In both cases (civil and criminal) *the verdict may well be founded on circumstances alone,* and these often lead to a conclusion more satisfactory than direct evidence.' (Italics supplied.) In Mars v. Philadelphia R. T. Co., 303 Pa., 80, 154 A., 290, 292, it was said that, where 'a fact is deducible as a reasonable inference from

the facts and conditions directly proved, and it cannot justly be classed as a mere conjecture, or surmise or guess.'

"In Com. v. Jeffries, 7 Allen, Mass., 548, at page 563, 83 Am. Dec., 712, Chief Justice Bigelow said: 'The process of ascertaining one fact from the existence of another is essential to the investigation of truth, and prevails in courts of law as well as in the ordinary affairs of life,' a like thought being thus expressed in other language by Wigmore, 'The conclusions and tests of every day experience must constantly control the standards of legal logic.' Wig. Ev., Volume 1, section 27, page 232.''

We therefore sustain the assignments of error and reverse the judgment of the trial court dismissing the suits.

Judgments will be entered here against the defendant, for plaintiff Emma Davis for $358.22, and for plaintiff Carrie Davis for $117.33 both with interest from March 25, 1943, and costs of the cause.

Reversed.

Felts and Hickerson, JJ., concur.