MARIE PACK, Plaintiff in Error, v. THE NAZARETH LITERARY AND BENEVOLENT INSTITUTE, INC., Defendant in Error.—362 S. W. (2d) 816.

**Eastern Section. May 10, 1962.**

**Certiorari Denied by Supreme Court October 4, 1962.**

Clarence Kolwyck, Chattanooga, for plaintiff in error.

Donald L. Halladay and Noone, Maseley & Noone, Chattanooga, for defendant in error.

McAMIS, P. J. Miss Marie Pack brought this action against Memorial Hospital to recover damages for pain and suffering, loss of time and medical bills incurred in the treatment of a sterile abscess which developed following a hypodermic injection made by a nurse while plaintiff was a patient at the Hospital recovering from an operation performed by her physician, Dr. Newell. There was a directed verdict for the Hospital at the close of plaintiff's proof in chief and from the judgment dismissing her suit plaintiff has appealed.

The declaration charges:

"That subsequent to the operation, on or about October 24, 1959, an employee of the defendant, attending her, negligently and wrongfully administered an injection into her right buttock, representing it as being 'dramamine', as prescribed by her attending physician, a routine and universally used prescription for nausea after anesthesia, but defendant's said employee was so negligent in filling the hypodermic syringe and in injecting its contents that excruciating pain immediately resulted. The pain gradually diminished although the area began to swell slightly, nevertheless she was discharged from the hospital on that same day. Shortly thereafter she began to develop a large swelling on her right buttock, and found it necessary to see her physician the next day, where he determined that she had a large sterile ulcer or abscess of her right buttock, in the same area where the injection was administered. The said ulcer or abscess was extensive, measuring about three or three and one-half inches in diameter. Due to the nature and extent of this large ulcer or abscess, she was forced to re-enter the hospital and

undergo three different surgical procedures. On January 7, 1960, the ulcer or abscess was disected, which left an extensive defect around five inches in diameter and about three inches deep. Two other operations were necessary, one on January 25, 1960, and one on February 9, 1960, to close the wound.''

Plaintiff testified that following an operation on October 21, 1959, she was given periodic hypodermic injections, alternatively in each buttock, by one of defendant's nurses, except that, due to her own objection, no injections were given on the 23rd; that on October 24th at 12:15 A. M. the nurse gave her an injection in the right buttock; that, although none of the prior injections had caused any pain except the pain usually caused by the injection of the needle, this particular injection caused excruciating pain extending down her right leg to the tip of her toes causing her leg to feel paralyzed.

Upon arriving home on the same day following her discharge from the hospital, plaintiff observed a black and swollen area on her right buttock five or six inches in diameter which, following home treatments directed by Dr. Newell, became greenish in color and more painful. Her condition was diagnosed by Dr. Newell on November 2, 1959 as a sterile abscess. All treatments failing, on December 28, 1959, she was referred to Dr. Davis, a plastic surgeon, under whose care and treatment she underwent three separate operations, each requiring hospitalization. Since a verdict was directed it is unnecessary to relate the cost of these treatments or the resulting loss of time.

Dr. Newell testified that, since the discovery of dramamine during World War II, it had become universally used to prevent nausea following the use of anesthetics;

that although he had prescribed it in hundreds and probably thousands of cases he had never had a case where dramamine had caused an abscess of any kind; nor had he ever heard or read of it causing anything more than a harmless bump on the skin.

Since dramamine was the only injection prescribed by Dr. Newell it is argued by plaintiff's counsel that the nurse must have negligently filled the syringe with some irritating substance which caused the abscess. To sustain this hypothesis, Dr. Newell was questioned about the cause of the abscess. Since his testimony on this question is the subject of some controversy, we quote it in full:

"Q Doctor, what in your opinion caused this abscess, or maybe I should phrase it this way. What causes, what causes sterile abscesses in people's buttocks?

"A I would say that the most probable cause of a sterile abscess in the buttock would be the injection of some irritant into the buttock, if the—if the sterile abscess followed the injection, followed an injection into the buttock.

"Q Well, assuming as you have testified she was injected by some form of hypodermic and that this sterile abscess developed the day following her discharge from the hospital it would be your opinion that some form of injection caused the abscess, is that correct?

"A I think that would be certainly the natural assumption.

"Q In your opinion was this abscess which Miss Pack had caused by the injection of Dramamine as you prescribed?

"A That is a very difficult question. I would certainly think that it probably would be highly against it.

"Q Well, I am basing it now on your experience and on your knowledge—

"Q Well, in other words, are you stating as your opinion that the abscess that she had was not caused by Dramamine?

"A As I said, that is a difficult question to answer. I have never seen it caused, I have never heard of it causing a similar abscess and yet I can't—I can't positively say that Dramamine did not cause it and yet I have never in my experience, I have never had an abscess following the injection of Dramamine and I have never heard of it having followed the injection of Dramamine."

It is argued that the Court's misconstruction of the foregoing testimony accounts for its action in directing a verdict for the defendant. How this may be we do not know. As we read Dr. Newell's testimony a jury could take it as tending to eliminate injections of dramamine as the cause of the abscess. He said: "I would certainly think that it probably would be highly against it." Considering this statement in context we think he intended to say that the probabilities would be against the use of dramamine causing the abscess. If ambiguous, it was for the jury to interpret this testimony. See 53 Am. Jur. 474.

■ It is the duty of the courts, both trial and appellate, in consideration of a motion for a directed verdict to consider the whole proof and not isolated parts of it which may seem to be inconsistent with other parts tending to sustain a verdict, Nelson v. Rural Educational Ass'n, 23 Tenn. App. 409, 134 S. W. (2d) 181, and to give

to the evidence that construction most favorable to the party against whom the motion is made. Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984; Hines v. Partridge, 144 Tenn. 219, 231 S. W. 16; Hughes v. Taylor, 29 Tenn. App. 548, 198 S. W. (2d) 337.

It is true Dr. Newell testified on cross examination that, in addition to the injection of an irritant, there are other causes of an inflammatory condition of the skin such as blood clot, the injection of penicillin or bismuth, trauma or a sensitivity or allergy of the patient, but he reiterated on cross examination that "number one would be the injection of some irritant into the tissue".

There is no proof that plaintiff is subject to an allergy of any kind or that she was subjected to any of the other conditions mentioned by Dr. Newell and, as we have seen, the only thing he prescribed was dramamine.

■ It is also insisted Dr. Newell reversed his testimony that the injection of an irritant was the most probable cause of the abscess. He was asked on cross examination if he had not testified in a discovery deposition that an allergy should be listed as the number one or more likely cause and the injection of an irritant as the second most likely to which he gave an affirmative answer. If there was a conflict between his discovery deposition and his testimony at the trial it went only to the weight of his testimony, a question to be determined by the jury. In addition, as we have said, there is no proof that plaintiff had an allergy of any kind.

■ It is unnecessary to decide whether res ipsa loquitur applies or whether the proof offered by plaintiff is to be regarded as circumstantial evidence. As said by Judge Felts, now Mr. Justice Felts of the Supreme

Court: "In the principle of proof employed, a case of res ipsa loquitur does not differ from an ordinary case of circumstantial evidence." Sullivan v. Crabtree, 36 Tenn. App. 469, 258 S. W. (2d) 782.

■ We hold that the circumstance that plaintiff had suffered no ill effects from prior injections of dramamine but reacted immediately when the last injection was given, taken in connection with Dr. Newell's testimony that he had used it hundreds if not thousands of times without ill effects and giving as the most probable cause the injection of an irritant constitutes evidence sufficient to take the case to the jury.

■ "It is true these circumstances cannot be made out by conjecture or speculation, but must be proved by evidence. Such evidence, however, need not rise to that degree of certainty which will exclude every other reasonable conclusion. It is enough if such evidence make out these circumstances as the more probably hypothesis—if the balance of the probabilities preponderate in favor of such circumstances. Bryan v. Aetna Life Ins. Co., 174 Tenn. 602, 130 S. W. (2d) 85; New York Life Ins. Co. v. Nashville Trust Co., 178 Tenn. 437, 451, 159 S. W. (2d) 81, 86; Law v. Louisville & N. R. Co., 179 Tenn. 687, 698-701, 170 S. W. (2d) 360; Phillips v. Newport, 28 Tenn. App. 187, 201, 202, 187 S. W. (2d) 965, 970, 971." Good v. Tenn. Coach Company, 30 Tenn. App. 575, 209 S. W. (2d) 41.

■■ Proof that some condition for which defendant would not be responsible because not due to any act of negligence on its part might have caused the abscess to form does not overcome as a matter of law proof that the more probable cause was defendant's negligence in sub-

stituting an irritant for dramamine. Under Good v. Tennessee Coach Co., supra, and the cases there cited in Judge Felts' opinion if there is proof making the negligence of the defendant the more probable hypothesis the case must go to the jury. Our conclusion is that there is such evidence in this case and that it was error to direct a verdict for defendant.

Accordingly, the case will be remanded for a new trial. Costs of appeal are adjudged against defendant.

Hale and Cooper, JJ., concur.