# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 10, 2019 Session

## ALAN CARTEE v. DALE MORRIS, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 16C190      Amanda J. McClendon, Judge**

_____

### No. M2018-02272-COA-R9-CV

_____

The plaintiff filed a premises liability action against a premises owner alleging that the premises owner was liable for injuries the plaintiff sustained after falling down a staircase located on the premises owner's property. The trial court denied the premises owner's motion for summary judgment but granted permission to pursue an interlocutory appeal. Because the plaintiff failed to present sufficient evidence of an essential element of his claim, we reverse the decision of the trial court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and J. STEVEN STAFFORD, P.J., W.S., joined.

Benjamin Cole Aaron and William Taylor Ramsey, Nashville, Tennessee, for the appellants, Dale Morris, Kyle Quigley, and MHM Holdings, LLC.

Colin M. McCaffrey, Goodlettsville, Tennessee, for the appellant, Dale Morris.

Eric Scott Cartee and Patrick Brian Newsom, Nashville, Tennessee, for the appellee, Alan Cartee.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

At some point prior to January 2014, Alan Cartee began working for a group of entertainment management companies owned by Dale Morris.[1] Mr. Cartee's job duties

---

[1] Mr. Morris owned the following entertainment management companies: Morris Higham Management, LLC, Dale Morris & Associates, and MHM Holdings, LLC.

included operating a recording studio and delivering studio recording fee checks to Jamie Summar at 818 19th Avenue South, Nashville, Tennessee ("the building"). On January 23, 2015, Mr. Cartee went to the building to deliver recording fee checks to Ms. Summar and fell down a wooden staircase located inside the building, rendering him unconscious for two days.

The building was a two-story former residence owned by Mr. Morris that had been converted into office space. Kyle Quigley, Ms. Summar, and Sue Leonard worked for the various entertainment management companies owned by Mr. Morris, and their offices were located on the second floor of the building at the time of the incident.[2] Mr. Morris also had an office on the second floor of the building. The staircase Mr. Cartee fell down was the most common way to access the second floor.[3]

Mr. Cartee initiated this lawsuit against Mr. Morris, Morris Higham Management, LLC,[4] MHM Holdings, LLC, and Mr. Quigley ("Defendants") on January 25, 2016. He alleged in his complaint that, as he was attempting to exit the second floor of the building onto the staircase, "he was required to attempt to step over a dog gate that had been installed at the very top of the staircase" by Mr. Quigley. Mr. Cartee further alleged that the dog gate constituted a dangerous condition and that he was injured because Defendants failed to either remove or warn of the dangerous condition. After Defendants filed an answer on March 16, 2016, the parties engaged in discovery by taking depositions of the following witnesses: Mr. Cartee, Mr. Quigley, Ms. Summar, Ms. Leonard, and Mr. Morris.

Mr. Cartee testified that, as a result of the accident, he could not remember many of the details surrounding his fall. He could not recall how often he delivered checks to the second floor of the building prior to January 23, 2015. He admitted, however, that he regularly delivered checks to the second floor of the building and that "sometimes the checks were sporadic; sometimes more than others." Initially, Mr. Cartee testified that he thought he remembered seeing the dog gate in the year prior to the accident, but he later testified that he did not "know for sure" and could not remember. He recalled seeing the dog gate at the top of the staircase when he climbed to the second floor on the day of the incident. Mr. Cartee had no memory of how he traveled past the dog gate once reaching the top of the stairs on the day in question, but he acknowledged that the gate did not

---

[2] Mr. Quigley worked as an artist manager for MHM Holdings, LLC; Ms. Summar worked as an executive assistant for Morris Higham Management, LLC; and Ms. Leonard worked for Dale Morris & Associates.

[3] There was also a separate, spiral staircase leading from the first floor to Mr. Quigley's office. It was rarely used.

[4] The trial court dismissed Morris Higham Management, LLC from the case. Accordingly, it is not a party to this appeal.

cause him to fall as he exited the staircase onto the second floor. He stated that, although he remembered delivering the checks to Ms. Summar and then speaking with her and Ms. Leonard, he had no personal knowledge of how he attempted to leave the second floor. Despite having no memory of the accident, Mr. Cartee believed that he fell down the stairs after tripping on the dog gate. He testified that he based this belief on what he "was told." When asked who told him he fell because he tripped over the dog gate, he responded that he did not know but speculated that either Ms. Summar or Ms. Leonard told him because they were the only people who could have witnessed the accident.

Regarding the dog gate, Mr. Quigley testified that he began placing it at the top of the staircase in January 2014 when he started bringing his dog to the office. Mr. Morris described the gate as weighing "less than half a pound" and standing "[a] foot and a half" in height. Mr. Quigley, Ms. Summar, Ms. Leonard, and Mr. Morris all stated that the gate was never anchored to the wall. Rather, it was simply propped up at the entrance to the staircase so it could be easily moved. Those with offices on the second floor would typically move the gate or step over it when accessing the staircase. According to all of the witnesses, they were not aware of anyone suffering injury from or complaining about the staircase or dog gate prior to the incident. Finally, contrary to Mr. Cartee's testimony that Ms. Summar or Ms. Leonard probably told him that he tripped over the dog gate, both women testified that they did not witness the accident. They heard the gate tumble down the stairs at the time Mr. Cartee fell, and Ms. Leonard saw that the gate was at the bottom of the stairs after the fall.

On October 13, 2017, Defendants filed a motion for summary judgment supported by all of the deposition testimony discussed above. Defendants argued that summary judgment was appropriate because, among other things, Mr. Cartee was unable to present prima facie proof of the cause in fact element of his claim. The trial court denied the motion in an order entered on March 21, 2018, concluding that "[i]t is reasonably foreseeable that someone would trip over the unsecure dog gate and fall down the stairs." The trial court further concluded that, because Ms. Summar and Ms. Leonard testified that they heard the dog gate tumble down the stairs at the time of the accident and that Ms. Leonard saw the gate at the bottom of the stairs afterwards, "[t]he reasonable inferences to which [Mr. Cartee] is entitled at the summary judgment stage preclude summary judgment in this case." Specifically, the court found that, based on the testimony of Ms. Summar and Ms. Leonard, "[a] reasonable juror could find that an unsecured dog gate at the top of a flight of stairs could have caused [Mr. Cartee's] fall." The trial court granted Defendants permission to seek an interlocutory appeal to this Court and, on January 17, 2019, we granted Defendants' application for an interlocutory appeal.

STANDARD OF REVIEW

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Therefore, "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must either submit evidence "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. If the moving party fails to show he or she is entitled to summary judgment, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

ANALYSIS

On appeal, Defendants argue that the trial court erred in denying their motion for summary judgment because Mr. Cartee is unable to prove all of the essential elements of his premises liability claim. Premises owners have a duty to exercise reasonable care to protect persons legally on their property from unreasonable risks of harm. *Easley v. Baker*, No. M2003-02752-COA-R3-CV, 2005 WL 697525, at *6-7 (Tenn. Ct. App. Mar. 24, 2005) (citing *Basily v. Rain, Inc.*, 29 S.W.3d 879, 883-84 (Tenn. Ct. App. 2000)); s*ee also Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). Included within this duty is the duty to "maintain[] the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping persons avoid injury by warning

them of conditions that cannot, as a practical matter, be removed or repaired." *Bowman v. State*, 206 S.W.3d 467, 473 (Tenn. Ct. App. 2006); *see also Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994) (holding that premises owners owed a duty "to maintain the premises in a reasonably safe and suitable condition" by "either removing or warning against any latent dangerous condition on the premises of which [the premises owners] were aware or should have been aware through the exercise of reasonable diligence").

To establish prima facie proof of negligence in a premises liability claim, a plaintiff must prove five essential elements: "'(1) a duty of care owed by defendant to the plaintiff; (2) conduct by the defendant that was below the standard of care, amounting to a breach of a duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation.'" *Singletary v. Gatlinburlier, Inc.*, No. E2015-01621-COA-R3-CV, 2016 WL 1644475, at *2 (Tenn. Ct. App. Apr. 25, 2016) (quoting *Williams v. Linkscorp Tenn. Six, L.L.C.*, 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006)). Defendants assert that the weak point in Mr. Cartee's case is the cause in fact element. The Tennessee Supreme Court has explained causation in fact as follows:

> Cause in fact refers to "the cause and effect relationship between the tortious conduct and the injury." *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013) (quoting *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993) (internal quotation marks omitted)). It is not enough for a plaintiff to show that a defendant's conduct was a possible cause of the injury; the defendant's conduct must be shown to be the probable cause. *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861-62 (Tenn. 1985) (quoting Keeton, PROSSER & KEETON ON TORTS § 41, at 269); *see also Kilpatrick*, 868 S.W.2d at 601-02.
>
> A defendant's conduct is a cause in fact of a plaintiff's injury if the injury would not have occurred but for the defendant's conduct. *King*, 419 S.W.3d at 246 (quoting *Kilpatrick*, 868 S.W.2d at 598). A plaintiff must prove that the negligence of the defendant more likely than not caused the injury. *Kilpatrick*, 868 S.W.2d at 598-99 (citing *Lindsey*, 689 S.W.2d at 861). Cause in fact may be shown by direct or circumstantial evidence. *See Law v. Louisville & Nashville R.R. Co.*, 179 Tenn. 687, 170 S.W.2d 360, 363 (1943) (Chambliss, J., concurring). Where proof of causation is made by circumstantial evidence, the evidence must be such that it tends to exclude any other cause; in other words, it must be proven to be more likely than not.

*Jenkins v. Big City Remodeling*, 515 S.W.3d 843, 851-52 (Tenn. 2017).

In the present case, the proof presented at the summary judgment stage concerning the cause in fact element of Mr. Cartee's claim consisted of testimony by Mr. Cartee, Ms. Summar, and Ms. Leonard. Mr. Cartee testified as follows:

> Q. Tell me in your own words, what's - - to the best of your memory, caused you to fall?
> A. From what I was told, apparently I attempted to step over the gate and fell.
> Q. And who told you that?
> A. I don't know. I guess different people.
> Q. You indicated that on that day the two people you saw on the second floor were [Ms. Summar] and [Ms. Leonard], right?
> A. Correct.
> Q. Do you think it was either [Ms. Summar] or [Ms. Leonard] who told you that?
> A. It could have been.
> Q. Do you know anybody else who could have witnessed your fall?
> A. No.

When asked what she remembered about the incident, Ms. Summar testified as follows:

> A. I remember telling him bye, and then I heard just a sound, just a loud sound, and then you could hear the gate falling down the stairs. And then there was just silence after that.
> Q. Okay. What happened next? Did you go out to see what was going on or did you hear something?
> A. From next door [Ms. Leonard] - - I remember her saying I believe, "Alan? Alan?" She called his name a couple of times, and there was no response. So we went to the top of the stairs and looked down, and we could see him lying there; he was on the landing.
> . . . .
> Q. Okay. Do you remember where this gate was at the time that you saw him at the bottom - - at the landing?
> A. I believe the gate had fallen because that was the noise that I had heard, but I don't really have a clear picture of exactly where it was.

Finally, Ms. Leonard testified as follows regarding what she remembered about Mr. Cartee's fall:

> Q. Did you witness him fall down the stairs?
> A. No.
> Q. Okay. Did you hear him fall down the stairs?

- 6 -

A. I heard a sound and I thought he perhaps had tripped or something and was going to stand up and say "I'm fine. Everything is fine." And I didn't hear anything. So I wondered had he fallen - -

. . . .

Q. Okay. Tell me what happened after you - - you testified that you thought you heard a noise and asked - - expected him to say "I'm okay," but you didn't hear him say that. What happened after that?

A. I got up and I went to the top of the stairs, and I saw the gate laying at the other - - there at the bottom of the landing, and I saw Mr. Cartee laying down at the landing. So I rushed down the stairs asking him if he was okay, and he was just laying there and didn't answer me.

. . . .

Q. Were you able to determine from either talking to him or from the scene about what - - what might have caused him to fall down the stairs?

A. No, I have no idea.

As the testimony above shows, neither Mr. Cartee nor any other witness was able to identify the object or condition that caused Mr. Cartee to fall down the staircase as he attempted to leave the second floor of the building.[5] The trial court denied summary judgment, however, concluding that the proof presented constituted prima facie evidence of the cause in fact element because, based on Ms. Summar's and Ms. Leonard's testimony, "[a] reasonable juror could find that an unsecured dog gate at the top of a flight of stairs could have caused [Mr. Cartee's] fall." Defendants argue that this was error because allowing the case to go to trial would permit a jury to speculate about the cause of Mr. Cartee's injuries. For the reasons discussed below, we agree.

We find this Court's opinion in *Epps v. Thompson*, No. M2017-01818-COA-R3-CV, 2018 WL 1353589 (Tenn. Ct. App. Mar.15, 2018), to be instructive in this case. In *Epps*, the property owner hired a handyman to paint her house and furnished him with a folding ladder for the job. *Epps*, 2018 WL 1353589, at *1. While painting the property owner's house, the handyman fell off the folding ladder and sustained an injury to his wrist. *Id.* The handyman sued the property owner alleging that the property owner was negligent by furnishing him with an old and unsafe ladder. *Id.* With respect to what caused him to fall off the ladder, the handyman testified that he "d[id]n't know if it was the devil or an act of God. The ladder just kicked out. It just kicked out." *Id.* at *2. Furthermore, he "stated that he did not see the ladder after he fell, so he did not know if a step broke, a hinge came loose, or if the ladder failed in some other respect. He testified

---

[5] In his appellate brief, Mr. Cartee asserts that the amnesiac presumption applies to this case. *See Ayrhart v. Scruggs*, No. M2003-00453-COA-R9-CV, 2004 WL 2113064, at *7 (Tenn. Ct. App. Sept. 21, 2004) (explaining that the amnesiac presumption "afford[s] an amnesiac accident victim the presumption that he or she acted with due care as to events about which the amnesiac has no memory"). At oral argument, however, Mr. Cartee stated that he was not relying on the presumption to prove the cause in fact element of his claim. Thus, we decline to address his argument regarding the amnesiac presumption.

that it was 'defective to the point where the legs [weren't] working right.'" *Id.* The trial court granted summary judgment to the property owner after concluding that the handyman "was not aware of why the ladder fell, and had no facts to show causation." *Id.* at *3.

On appeal, this Court affirmed the trial court's grant of summary judgment, stating, in pertinent part, as follows:

> Mr. Epps testified during his deposition that he did not know what caused him to fall off the ladder. He said the ladder "just kicked out," but he did not know if he simply lost his balance, if the ladder itself failed, or if something else caused him to fall.
>
> The facts here are not unlike the facts of *Lurks v. City of Newbern*, No. W2016-01532-COA-R3-CV, 2017 WL 384429 (Tenn. Ct. App. Jan. 26, 2017), where the plaintiff fell while walking on a sidewalk and sued the city for negligence. *Lurks*, 2017 WL 384429, at *1. The plaintiff asserted that the sidewalk was defective, and she introduced photographs showing the sidewalk's poor condition, but she did not know if she fell because of the sidewalk's condition. *Id.* She testified that she did not stumble before she fell, and she did not know if her foot hit anything that led to her fall. *Id.* The trial court held that the plaintiff had failed to prove the city was negligent because she could not connect her injury to the defective condition of the sidewalk. *Id.* at *3. The Court of Appeals affirmed the trial court's decision, explaining "we will not presume negligence simply because an accident occurred. A plaintiff must be able to prove causation." *Id.*; *see also Hickman v. Jordan*, 87 S.W.3d 496, 499 (Tenn. Ct. App. 2001) ("[N]egligence is not presumed from the mere fact of an accident or injury.").

*Id.* at *4. The *Epps* Court concluded that the handyman could not prove the cause in fact element of his claim because:

> "Negligence shall not be presumed absent an affirmative demonstration from the evidence. Therefore, in the context of injuries to plaintiffs resulting from a fall, mere speculation about the cause of an injury is insufficient to establish liability on a negligence claim. As such, a plaintiff will be prevented from establishing negligence when he, either personally or with the use of outside witnesses, is unable to identify what caused the fall. In other words, a plaintiff must know what caused him to slip and fall. A plaintiff cannot speculate as to what caused the fall."

*Id.* at *5 (quoting *Lurks*, 2017 WL 384429, at *3).

In the present case, Mr. Cartee was the only witness to the accident and unfortunately, he is unable to remember what caused him to fall. Although both Ms. Summar and Ms. Leonard heard the dog gate tumble down the stairs at the time of Mr. Cartee's fall and Ms. Leonard saw the dog gate at the bottom of the staircase after the fall, this circumstantial evidence does not tend to exclude any other cause, such as Mr. Cartee falling due to fainting or tripping over his own feet. Thus, submitting the case to a jury would require the fact finder to speculate as to what caused Mr. Cartee's injuries. "Courts need not submit to the jury negligence cases containing only a spark or glimmer of evidence that requires the finder-of-fact to make a leap of faith to find the defendant liable for the plaintiff's injury." *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 866 (Tenn. Ct. App. 2001). Mr. Cartee, therefore, is unable to prove an essential element of his negligence claim. Accordingly, we conclude that Defendants are entitled to summary judgment.

CONCLUSION

The judgment of the trial court is reversed and remanded with directions to grant Defendants' motion for summary judgment and to dismiss the complaint. Costs of appeal are assessed against the appellee, Alan Cartee, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE