# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

September 1, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

GREI S. HINSEN,             )

      Plaintiff/Appellant,     )

             )    Appeal No.

VS.                )    01-A-01-9811-CH-00583

             )

MARK E. MEADORS,       )    Davidson Chancery

Individually and d/b/a MEM    )    No. 97-4080-II

CONTRACTORS, and HAILEY   )

BROWN,              )

             )

      Defendants/Appellees.  )

## APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

### THE HONORABLE CAROL L. MCCOY, CHANCELLOR

PHILLIP BYRON JONES
1810 First Union Tower
150 Fourth Avenue North
Nashville, Tennessee 37219
      Attorney for Plaintiff/Appellant

STEPHEN M. MILLER
1103 B 17th Avenue South
Nashville, Tennessee 37212
      Attorney for Defendant/Appellee Mark E. Meadors

W. GARY BLACKBURN
414 Union Street, Suite 2050
Nashville, Tennessee 37219
      Attorney for Defendant/Appellee Hailey Brown

## AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# O P I N I O N

This is an action by a homeowner against a remodeling contractor and a painter for the failure of the paint inside the house. The Chancery Court of Davidson County dismissed the homeowner's claims. We affirm.

## I.

Grei S. Hinsen, an interior designer, bought a 1960's ranch home in Forest Hills in the fall of 1995. He had plans to renovate the home and he relayed these plans to Mark E. Meadors, a home improvement contractor. Mr. Meadors made an estimate for the changes, and Mr. Hinsen hired him to supervise the work. Mr. Meadors secured the labor and materials and Mr. Hinsen paid his costs plus a mark-up of twenty percent. Mr. Meadors agreed that all work done under his control and supervision would be done in a workmanlike manner.

The interior changes required the removal of a load-bearing wall and the installation of a beam to help support the roof. The new walls had to be taped, finished, sanded, and painted. Mr. Meadors hired a drywall contractor. He also hired a painter. After the drywall contractor left the job Mr. Meadors and the painter noticed some irregularities in the work. Mr. Meadors himself repaired some of the areas where the irregularities appeared. On other areas Mr. Meadors and the painter chose to use a product called Sheetrock Firstcoat to give the walls an even appearance.

The interior work took place in the winter. Mr. Meadors used two propane heaters to provide heat until the central heating unit was installed. Despite the use of the heaters, the evidence is in conflict as to whether the indoor temperature ever reached a level where it was safe to apply the Firstcoat or the paint.

There were three parts of the overall work that the owner accomplished on his own without Mr. Meadors' supervision. He had a pool installed to the rear of the house; he had the exterior landscaped and a sprinkler system installed; and he had a metal roof placed over the old roof. When the weather warmed up, it became obvious that the air conditioning system would not satisfactorily cool the house nor reduce the inside humidity. In installing the new metal roof the roofing contractor altered the attic ventilation to such an extent that the attic became very hot, and the ceiling radiated heat into the interior of the house. The outside sprinkler system also apparently caused water to run into the crawl space under the house, and the landscaing work covered over some of the foundation vents.

The evidence is in dispute over the effect of the new roof and the water in the crawl space on the humidity level in the house at the critical time after the paint was applied. It is undisputed, however, that the owner had Mr. Meadors install an exhaust fan and eave vents in the attic and an exhaust fan in the crawl space.

Within a few weeks of moving into the home the owner noticed that the paint had cracked above some of the light switches. It also cracked next to the recessed light fixtures and the heating/air conditioning vents in the ceiling. The problem became progressively worse. The paint peeled in some places and cracked along the baseboards and in the corners. In other places ridges formed as if the wall had buckled slightly.

The owner sued Mr. Meadors and Mr. Brown, the painter. The complaint contained two counts, one for negligence and the other for breach of contract. At the close of the plaintiff's proof both defendants moved for dismissal pursuant to Rule 41.02, Tenn. R. Civ. Proc. In response the trial judge stated:

> "As I have reviewed the evidence thus far, it appears that the plaintiff has at least presented the prima facia [sic] case in that Mr. Brown was employed, and privity is not essential in these matters, to paint the house.

He had the duty to do it in a workman-like fashion and to use the requisite care in applying the paint.  The paint did not adhere.  The plaintiff has put forth several theories and presented evidence to support those theories that he submits -- demonstrates there has been a breach of the duty.  He's also put on evidence that Mr. Hinsen has incurred expenses to repair the damage by virtue of that breach.

"The Court makes no finding at the time -- at this time that there has been a breach or that the damages are attributable to the work done by Mr. Brown, but merely finds that there is a prima facia [sic] case that has been made.

"With regards to Mr. Meadors, likewise a prima facia [sic] case exists on the tort claim.

\*          \*          \*

"While Mr. Hinsen has alleged a claim for breach of contract cause of action, has as a factual basis damage to property, that is, defective or poor workmanship, failure to abide by the duty to perform in a workman-like fashion, which means that the gravamen of the complaint is damaged property which sounds in tort as opposed to contract.

\*          \*          \*

"My Court primarily deals with breach of contracts, and what I have been presented with is essentially a tort claim: failure to perform the work in a workman-like fashion.  Yet it constitutes a breach of a contract, but it is a tort action that is being pursued.

\*          \*          \*

"I respectfully deny the motion for an involuntary dismissal."

At the close of all the proof, the court said:

"I cannot find by a preponderance of the evidence what caused the problem.  And in that regard, I must decline to find liability on the part of Mr. Meadors or Mr. Brown by virtue of their negligence."

**II.**

- 4 -

The homeowner argues that the chancellor erred in dismissing the claim, after finding that he had presented a prima facie case of liability. That finding came at the end of the plaintiff's proof when the chancellor responded to the defendants' Rule 41.02, Tenn. R. Civ. Proc. motion to dismiss. The chancellor also stated that "the Court makes no finding at the time -- at this time that there has been a breach or that the damages are attributable to the work done by Mr. Brown, but merely finds that there is a prima facia [sic] case that has been made." At the end of all the proof, the chancellor dismissed the claim.

To find that the chancellor erred we would have to conclude that there was nothing in the defendants' proof to refute the plaintiff's case. Having reviewed the proof we cannot come to that conclusion. In view of all the evidence, we conclude that the defendants' proof introduced enough doubt about the cause of the paint failure that the chancellor could easily have been moved from a point on the plaintiff's side of the balance to a point of doubt about the cause of the failure.

### III.
### a. Negligence

The homeowner argues that the evidence introduced at the trial can rationally support only one conclusion: that the actions and omissions of the defendants caused the paint to fail. On that point Mr. Hinsen called an expert, a forensic paint specialist, who conducted some tests and concluded (1) that the drywall "mud" had not cured properly before the paint was applied; (2) that the paint was applied over a film of drywall dust; and (3) the primer and paint were applied when the indoor temperature was too cold for the material to cure properly. He also testified that some of the failures were consistent with a structural movement in the house itself.

The painter and his employees testified that the mud was dry when they applied the primer and paint; that wet mud cannot be sanded and that it had been sanded when they began their work; and that the mud appeared to be dry by sight and touch. They also testified that they had wiped the surfaces clean before they painted over them.

Mr. Meadors testified that all the products were applied according to specifications; that the propane heaters were not used during the application of the primer or the paint, and that the heaters therefore did not add to the humidity in the house. Mr. Meadors also offered a heating and air conditioning expert to testify that moisture in the crawl space would migrate upward, through the floor and through the walls, seeking an outlet to the cooler, dryer air inside the house. The obvious outlets were vents, light switches, and lights -- anywhere the walls were not sealed.

At the close of all the proof the chancellor said:

> "I cannot find by a preponderance of the evidence what cause the problem. . . . There are a number of reasons why moisture might be preventing the paint from adhering. The one which is asserted is that it was put on when the mud was dry and the drywall was wet -- excuse me -- when the mud was wet and the drywall was wet. I can't find that on a factual basis by the evidence put before me."

While the chancellor's ruling may not contain a finding of fact (that the paint was properly applied) to which the presumption of correctness applies, see Rule 13(d), Tenn. R. App. Proc., if she is correct, her ruling is equally as fatal to the homeowner's claim. The plaintiff in a negligence action has the burden of proving by a preponderance of the evidence that the defendant's negligence was the probable cause of the plaintiff's loss, rather than some other equally probable cause. *Hollingsworth v. Queen Carpet, Inc.,,* 827 S.W.2d 306 (Tenn. App. 1991). Where the facts permit two equally probably inferences to be drawn, one of negligence and the

other of innocence, the plaintiff has failed to carry the burden of proof.  *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560 (Tenn. App. 1985).

We find ourselves in the same dilemma as the chancellor.  We cannot say that it was more probable than not that the paint failed because it was improperly applied or was applied under conditions that would cause it to fail.

The only evidence of those facts is the opinion of the plaintiff's expert. He, of course, had no first-hand knowledge of the facts (except that he found drywall dust on one paint sample), so the only thing he could do was give an opinion that what he saw was consistent with improper application.  Arrayed against this opinion is testimony from the persons involved that the paint was applied properly and under the proper conditions.  In addition, the uncontradicted proof showed that the installation of the metal roof, along with the destruction of the attic ventilation system, had a major effect on the ability of the air conditioning system to remove the moisture from inside the house.  The landscaping also covered up vents in the crawl space, and the sprinkler system caused water to run under the house.  Since the first paint failures occurred around switches, vents, and recessed lights, this fact is consistent with the testimony that moisture from under the house would most likely emerge in these areas.

There is also the probability that some of the paint failures resulted from a shift in the house structure.  The exhibits show that in some places the paint did not peel or flake off, but it buckled or tore along a seam or joint.  This fact is consistent with the shearing that would occur if the house moved.

We cannot find that the evidence preponderates in favor of an inference that the paint was improperly applied.

## b. Breach of Contract

The homeowner argues that Mr. Meadors is liable for a breach of his promise to see that that work was done in a workmanlike manner. Our discussion in the previous section bears on this question. If we are correct in that analysis, the contractor did not breach his contract by allowing the paint to be applied in an improper manner.

Nevertheless the homeowner argues that the contractor would be responsible for the attic ventilation problem. The proof shows, however, that the only part Mr. Meadors played in that problem was to do the remedial work of installing the eave vents and the attic fan. There is no evidence that these two projects were not accomplished in a workmanlike manner. One witness was critical of the size of the eave vents, but the remedial measures apparently solved the problem of the excessive attic heat.

The same can be said about the moisture in the crawl space. The work that caused that problem was not done under Mr. Meadors' supervision. He did not supervise the landscaping work that covered the crawl space vents and caused the sprinkler system to spray water on the foundation. He did suggest to the owner that he install an exhaust fan to move the air out of the crawl space. There is no complaint about the workmanship in installing the fan.

The problem of the house shifting or settling falls closer to Mr. Meadors' area of responsibility. He did oversee the removal of the load bearing walls and he installed the beam that allowed that wall to be removed. However, Mr. Meadors is not an architect nor a structural engineer. He supplied the data concerning the span and the type of roof to a vendor, and the vendor specified a laminated beam of a certain size for the project. Perhaps Mr. Meadors should have foreseen the problem and

advised the homeowner against it. But there is simply no proof whatsoever on that point. Nor is there any proof of the severity of the settling or shifting that would be required to produce some of the paint failures shown in the exhibits. Even a slight movement within the acceptable range of flexure for the beam may have caused the problem. We cannot conclude that the installation of the beam fell below the standard of good workmanship.

We affirm the judgment of the court below. The cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE