AETNA CASUALTY AND SURETY COMPANY, Plaintiff–Appellant,

v.

James E. PARTON, Defendant–Appellee.

Court of Appeals of Tennessee,
Eastern Section.

May 16, 1980.

Certiorari Denied by Supreme Court
Aug. 2, 1980.

David E. Smith, with Hodges, Doughty & Carson, Knoxville, for plaintiff–appellant.

Charles C. Burks, Sr., Knoxville, for defendant–appellee.

OPINION

SANDERS, Judge.

In this suit the Plaintiff seeks to recover from the Defendant the amount it paid out under a fire insurance policy as a result of the Defendant's allegedly setting fire to a residence.

The Defendant–Appellee, James E. Parton, and Alice Parton were divorced some time prior to March 31, 1978. After the divorce Mrs. Parton resided with her three children at 7704 Windy Lane in Knoxville. Presumably she owned the residence and the Plaintiff–Appellant, Aetna Casualty and Surety Company, had a fire insurance policy on the property in the name of Mrs. Parton. The Defendant was under a court order to pay child support to Mrs. Parton and apparently had certain visitation privileges with the children. On March 31 he came to Mrs. Parton's home and stated he wanted to take their small son to the lake fishing. He was intoxicated at the time and Mrs. Parton refused to permit the child to go. An argument ensued and Mrs. Parton left the home, saying she was going across the street to a neighbor's house and call the police.

While Mrs. Parton was at the neighbor's home both she and her neighbor, Mrs. Weaver, saw the Defendant come out of the house, go to his car which was parked in the driveway, open the trunk of the car and return to the house. They did not see anything taken out of the car. Some thirty minutes later Mrs. Weaver and a Mrs. Brown, who were standing in Mrs. Weaver's yard, saw that the Parton house was on fire. Shortly thereafter Mrs. Weaver saw the Defendant come out of the garage, which was attached to the house, and start toward his car. She hollered at him and said, "Jim, the house is on fire!" He did not respond. She then hollered out, "Where are the children?" He still did not respond but got in his car and left immediately.

The Plaintiff paid Mrs. Parton $18,056.94 as damages to the house and took a subrogation agreement on which it sued the Defendant, alleging he wilfully and intentionally set fire to the house.

The Defendant denied the allegation and the case was tried before the circuit judge without a jury. The court found the issues in favor of the Defendant and the Plaintiff has appealed. The Plaintiff presents the following issue for determination: "Did the trial court err in deciding there was insufficient proof that the Defendant wilfully burned the house of his ex–wife?"

The residence appears to be a relatively new one–story house. When one enters the house from the front door you enter directly into the living room. A hall leads off the living room. Immediately to the left is the door to the kitchen. Then farther down the hall is a door to the right leading into a bedroom and at the end of the hall on the left is another bedroom. The living room hall and two bedrooms were covered with wall–to–wall carpet. More damage was done to the living room than to the other rooms of the house. The carpet in the living room had deep burns in it running in an irregular pattern. The carpet in the hallway had burns of a similar pattern. Many of the burns in the carpet burned all the way through the carpet to the floor. The upholstered couch in the living room had deep burns in portions of the cushions. Other portions of the upholstery were only scorched.

Mr. Jack Trammell, who is an insurance investigator for Aetna and who has investigated hundreds of fires, testified that from the type and pattern of burns on the carpet and the upholstery of the couch it was his opinion some type of accelerant such as gasoline or kerosene had been put on the carpet and couch before the fire.

Mr. Macon Jones, Batallion Chief for the Tennessee Rural Metro Fire Department, who investigated the fire, testified to the same effect.

Mr. Bill Breeding, who is arson investigator for the State of Tennessee, did not examine the premises after the fire but in response to hypothetical questions describing the condition of the premises testified that in his opinion some accelerant had been used.

Each of these witnesses explained that fire on a carpet would follow the "trails" of an accelerant and cause deep burning on these trails, leaving a pattern similar to the condition of this carpet after the fire. They also explained that the soaking of the accelerant into upholstered furniture would

cause deep burning in places with only scorching in others, which was similar to the condition of the couch in this house.

The proof also showed that in the bedroom to the right of the hall there was a burned spot in the carpet about five or six inches in diameter. There was charred newspaper at this spot and this burned spot was not connected with the fire in the hall. There was also a burned "trail" in the hall carpet leading from the front bedroom back to the back bedroom at the end of the hall. In the back bedroom there was wadded newspaper that was partially burned and the carpet was burned beneath this newspaper. This fire was not connected to the fire in the hall.

When Mr. Breeding was asked his opinion about the two separate fires in the bedrooms he said, "It would be my opinion that these would be separate, individual fires. And as being that, that there's only one explanation for the fire, and that would be someone set the fire."

The Defendant testified he did not set the fire. He said when his wife left the house he lay down on the couch and went to sleep. When he woke up he was hot and smothering. He couldn't go out the front door and went out through the garage. He didn't deny he had left the house and gone to his car and opened the trunk but said he didn't remember doing it. When asked whether or not the children were in the house when he left after the fire he said he didn't know. He was scared. When asked if he came back to the house after he left he said he came back by there that night. His statement was, "After I had got my senses back I did come back by and the fire was out."

The trial court, in his determination of the case, seemed to be of the opinion that, since there was only circumstantial evidence that the Defendant did burn the house but there was positive testimony he did not, the positive evidence should take precedence over the circumstantial evidence. In his decision of the case the court said: "Well, it's an interesting case, gentlemen. A difficult case. There's a lot of strong circumstantial evidence that he did it. But he gets on the stand and denies that he did it and said when he woke up it was on fire. There is no evidence that he carried any incendiary devices in. There is no evidence that there was any gasoline in the house or kerosene. So you have—the real issue, of course, is, I think in this case, that you have circumstantial against positive that he didn't do it. The Court feels that in this situation that the Plaintiff has failed to make out the case and give the judgment for the Defendant."

We cannot agree with the trial court.

"When a party in a civil case relies upon circumstantial evidence to make out his case, the facts and circumstances shown by the evidence and relied on to sustain his theory must not only be consistent with that theory, but must also be inconsistent with any other reasonable theory. However, they need not be so certain as to exclude all other rational theories. A preponderance of such circumstantial evidence is all that is required in a civil case. And in civil cases a preponderance of evidence carries the burden of proof regardless of whether the evidence is direct or circumstantial. A well-connected train of circumstances may be as cogent as direct evidence and may outweigh opposing direct testimony. However, in a civil action, circumstantial evidence which is conflicting is for the trier of the facts, governed by the usual rules." O'Neil Lee, Tenn. Evidence, p. 338. Also see *Bryan v. Aetna Life Ins. Co.*, 174 Tenn. 602, 130 S.W.2d 85 and *Pickard v. Berryman*, 24 Tenn.App. 263, 142 S.W.2d 764.

We think the evidence preponderates against the holding of the trial court. The Defendant had ample opportunity to set the fire. It cannot be said he was totally without motive. Although the couch on which he allegedly was sleeping was badly burned, there is no showing the Defendant or his clothing were burned. Why was he scared? What excuse was there for immediately leaving the scene without offering assistance, calling the fire department or even

attempting to ascertain whether or not his children were in the house? Finally, we don't think it takes an expert to conclude there was arson when there was evidence of two separate fires in the bedrooms unrelated to the other fire and started from wadded–up newspaper.

The issue is resolved in favor of the Plaintiff. The judgment of the trial court is reversed and a judgment is awarded in favor of the Plaintiff for $18,056.94. The cost of this appeal together with the cost of the trial court is taxed to the Defendant. The case is remanded to the trial court for the enforcement of the judgment.

GOODARD and FRANKS, JJ., concur.