**Joseph A. HOLLINGSWORTH, JR., Plaintiff–Appellee,**

**v.**

**QUEEN CARPET, INC., and Parker Floor Covering, Inc., Defendants–Appellants.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

Sept. 18, 1991.

Application for Permission to Appeal Denied by Supreme Court Feb. 24, 1992.

George H. Buxton, III, Oak Ridge, for plaintiff-appellee.

Philip P. Durand, Knoxville, for defendants-appellants.

CRAWFORD, Judge.

Defendants, Queen Carpet, Inc., (hereinafter Queen) and Parker Floor Covering, Inc., (hereinafter Parker) appeal from the judgment of the trial court sitting without a jury which awarded money damages to plaintiff, Joseph A. Hollingsworth, Jr.

Plaintiff's complaint alleges that he contracted in June of 1984 with Parker, a floor covering retailer, for the purchase and installation of carpet manufactured by Queen in an apartment project owned by plaintiff known as Carriage Hill Townhomes in Clinton, Tennessee.

Plaintiff avers that the carpet was not manufactured in a good workmanlike manner, that unsuitable and defective materials were used, and that the carpeting, among other things, separated from its support backing. Plaintiff also alleges that defendants breached an implied warranty of fitness for a particular purpose pursuant to T.C.A. § 47–2–315 and breached an implied warranty of merchantability pursuant to T.C.A. § 47–2–314.

Defendants' answers joined issue on the material allegations of the complaint, and defendant Parker filed a cross claim against defendant Queen for indemnity should it be held liable by virtue of defective merchandise manufactured by Queen.

After a nonjury trial, the trial court found that plaintiff had carried the burden of proof against both defendants, that the carpet was not fit for the ordinary purpose for which it was purchased and that the defendants breached an implied warranty of merchantability pursuant to T.C.A. § 47–2–314. The court awarded $58,780 damages to plaintiff and also entered judgment in favor of Parker on his cross claim against Queen.

Both defendants have appealed, and, although several issues are presented for review, we consider the dispositive issue to be whether the trial court erred in finding that plaintiff had carried his burden of proof that the carpet was not fit for the ordinary purpose for which it was used and defendants breached an implied warranty of merchantability.

In June, 1984, plaintiff was constructing an apartment complex in Clinton known as Carriage Hill Apartments and contracted with Parker for the purchase and installation of the carpet for the apartment units. Queen then manufactured the carpet; Parker purchased it from Queen and sold it to plaintiff. The carpet was installed throughout the apartment complex in late September and October, 1984, and it is conceded that the carpet was correctly installed. Plaintiff testified that after installation they had problems with seams in some of the carpets which required corrective work by Parker. Plaintiff stated that about a year and half to two years after installation they began having a problem with backing on the carpet. It appeared that the top part of the carpet would start to unravel and continue to unravel from the backing. Plaintiff noted that the tenants in the individual apartments were allowed to clean the carpets in their apartments and many used a system referred to as Rinse–N–Vac which could be rented at the local grocery store. This system is a water injection system that allows for cleaning and then sucks the water back out of the carpet. Hollingsworth testified that the carpeting for his apartment projects usually had a life expectancy of 10 to 12 years and that in this particular instance he had only two years of service because of the delamination. Mr. Hollingsworth was not familiar with the way the tenants used the Rinse–N–Vac system and there was no supervision of the carpet cleaning by the personnel of the apartment complex. Virtually all of the carpeting purchased from Parker had delaminated, although they had no delamination problem with carpeting used in other apartment units. Mr. Hollingsworth was not familiar with the manufacturing process for the carpet. Hollingsworth asserted that the delamination occurred in all of the Queen manufactured carpet, even in those areas which had not been cleaned with the Rinse–N–Vac system.

Harold Gene Laine, apartment manager for the Hollingsworth company, testified that he managed all of the Carriage Hill Apartment complex for Hollingsworth and had been manager for about seven years. He testified that older apartments in the complex have carpet which is about fourteen years old. He stated that this older carpet had been consistently cleaned with the Rinse–N–Vac method without any adverse result. As for the carpet manufactured by Queen, Laine testified that it too had been cleaned with Rinse–N–Vac, but that it had begun to delaminate about a year and a half after it was installed. He described the general condition of the Queen carpet and how it would come loose from the backing and "look like an ol' wrinkly dog." He also testified that the delamination did not occur in the areas of the apartment such as closets that were not cleaned with the Rinse–N–Vac method.

Jack Parker called as a witness by plaintiff, testified that in June of 1984 he owned Parker Floor Covering, but that he is now no longer connected with the company. He testified that he had previously furnished "Cabin Craft" carpet to plaintiff and that when plaintiff ordered the carpet in question he said that he wanted carpet similar to what he had ordered before. The Queen carpet was selected as comparable carpet. During the time that he dealt with plaintiff he gave him cleaning instructions and probably this was in connection with the Cabin Craft carpet, although the cleaning instructions are generally the same for different manufacturers. He remembered that the instructions included not to over-wet the carpet.

Parker sold his interest in Parker Floor Covering in 1986. Prior to his departure he was aware of no complaints from Hollingsworth concerning the Queen carpet. He testified that the general life-span for apartment carpet is anywhere from five to seven years. He also testified that if the carpet is overly wet the backing is subject to break down. This is caused by crystallization of the latex which holds the backing together. Once crystallization occurs, the backing comes apart.

The defendants introduced the testimony of Brin Hendrix, the quality control manager of Queen carpet. He testified that he had been quality control manager for about six years and he described the manufacturing process for the carpet involved. He also explained the quality control measures in force in 1984 when the subject carpet was manufactured. Following these procedures, the carpet was tested and exceeded the standards required at that time. He opined that, based upon the information furnished to him, the cause of the delamination of the subject carpet was excessive moisture.

Ray Pulliam, presently part owner of Parker Floor Covering, Inc., testified on behalf of defendant. In 1984, he was an employee of Parker Floor Covering and inspected the installation of the carpet in the apartment complex. He described the installation and stated that it was installed properly. He testified that his company had placed carpet in four units because of a delamination problem. He also recalled a problem in approximately four other units. He stated that he and his partners purchased Parker Floor Covering in November of 1986 and that at the time they made the purchase there had been no complaints from Hollingsworth concerning delamination problems. He said that later they had some complaints concerning seams which they had repaired and that in April, 1988, had further complaints concerning the carpet backing.

Pulliam recalled two occasions in which he had helped to replace the deteriorated carpet. He stated that on each occasion he had noticed moisture damage to the particle board beneath the carpet padding.

Defendants introduced the testimony of Tim Smith, the president of Floor Covering Institute of Technical Services in Dalton, Georgia. He detailed his education, technical background and experience and related the check list he used while making carpet inspections. In August, 1989, he inspected the carpeting at the Carriage Hill Apartment Complex at the defendant's request. He was accompanied by the apartment complex manager, Laine. Smith used a

moisture detector, an instrument that detects the presence of moisture in carpets, in each of five apartment units. Three of the units had moisture present. In addition to using the moisture detector, Smith examined portions of the carpet which had delaminated by pulling the carpet back and inspecting the underside. He determined that the carpet showed evidence of excessive moisture which included black mildew spots. He opined that the cause of the delamination in the carpets that he inspected was excessive moisture. He also testified that he could see no evidence of leakage from pipes or anything of that nature. He opined that the use by apartment residents of Rinse–N–Vac equipment to clean the carpeting could cause the excessive moisture. The excessive moisture in turn would cause the latex to break down and the carpet to deteriorate.

In the case before us, plaintiff presented no expert testimony to establish the cause of the delamination problem. Plaintiff introduced no testimony from any of the apartment residents concerning the care and treatment of the carpet in their individual units. In short, plaintiff asserts that the delamination of the carpet about a year to a year and a half after the carpet was installed is evidence that the carpet was not fit for the ordinary purpose for which it was used and breached the implied warranty of merchantability.

**47–2–314. Implied warranty—Merchantability—Usage of trade.**—(1) Unless excluded or modified (§ 47–2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as:

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (§ 47–2–316) other implied warranties may arise from course of dealing or usage of trade.

■ Under T.C.A. § 47–2–314 (1979) there can be no recovery by the purchaser from the immediate seller unless it has shown that the goods purchased do not measure up to the requirements of the implied warranty at the time the goods passed from the seller to the purchaser. *Leach v. Wiles,* 58 Tenn.App. 286, 429 S.W.2d 823 (1968).

■ A fact may be proved by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Greer v. Lawhon,* 600 S.W.2d 742 (Tenn.App.1980).

■ In a civil case depending on circumstantial evidence it is sufficient for the party having the burden of proof to make out the more probable hypothesis and the evidence need not arise to that degree of certainty which will exclude every other reasonable conclusion. *Bryan v. Aetna Life Ins. Co.,* 174 Tenn. 602, 130 S.W.2d 85 (1939). In a civil case, where the plaintiff's case depends upon the circumstantial evidence, it is necessary for the plaintiff to present proof which, if believed by the trier of fact, makes the plaintiff's theory of the case more probable than the theory of the defendant. *Benson v. H.G. Hill Stores, Inc.,* 699 S.W.2d 560 (Tenn.App.1985).

■ In the case before us, there is uncontradicted proof that the complaints of delamination occurred one to one and a half years after the installation of the carpet, that excessive moisture can occur because of the cleaning method utilized by the

apartment residents, that excessive moisture was present in the carpeting installed in several inspected apartments, and that excessive moisture causes delamination of carpeting such as involved in the instant case. As previously noted, plaintiff introduced no proof of an expert nature, but more importantly did not introduce any proof concerning the actual cleaning of the apartment carpets by the tenants and the knowledge on the part of the tenants of moisture or the lack thereof.

Under the record in this case, we cannot say that plaintiff has carried the burden of proof that it is more probable that the carpet was not fit for its ordinary purpose at the time it was installed rather than that the delamination was caused by excessive moisture.

Accordingly, the judgment of the trial court is reversed and plaintiff's complaint is dismissed. The case is remanded to the trial court for such further proceedings as may be necessary and costs of appeal are assessed against appellee. All other issues are pretermitted.

FARMER and GODDARD, JJ., concur.