# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 25, 2012 Session

## DAN C. RAY ET AL. v. SADLER HOMES, INC.

**Appeal from the Circuit Court for Wilson County**
**No. 14816      John D. Wootten, Jr., Judge**

**No. M2011-01605-COA-R3-CV - Filed June 13, 2012**

Plaintiff-homeowners filed this action for breach of contract, breach of warranty, and violations of the Tennessee Consumer Protection Act against the builder and seller of their home alleging that the home was not constructed in a workmanlike manner. Following a bench trial, the trial court found that the defendant breached the contract and the express and implied warranties, and violated the TCPA. The court awarded damages of $90,000 for the diminution in value of the home. The court also held Plaintiffs were entitled to recover their attorney's fees pursuant to the TCPA. Defendant appealed arguing that Plaintiffs failed to prove causation, that the trial court erred in awarding damages in the amount of $90,000 for the diminution in value of the home, and erred in finding it violated the TCPA for which the trial court awarded attorney's fees. We affirm the trial court's findings as to Plaintiffs' claims for breach of contract and breach of warranty and affirm the trial court's determinations as to damages; however, we find the evidence preponderates against the finding of a violation of the TCPA and therefore the trial court erred by awarding Plaintiffs their attorney's fees.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., and BEN H. CANTRELL, SP. J., joined.

Stephen E. Grauberger, Mt. Juliet, Tennessee, for the appellant, Sadler Homes, Inc.

Michael R. Jennings, Lebanon, Tennessee, for the appellees, Dan C. Ray and wife, Detra L. Ray.

# OPINION

Plaintiffs, Dan and Detra Ray, entered into a Purchase and Sale Agreement with Sadler Homes, Inc., for the purchase of a home in Lebanon, Tennessee that was built as a "spec" home by Sadler Homes. Rhonda Sadler acted as the real estate broker in the transaction.

Following the closing, the Rays began noticing numerous problems with the home including hollow spots in the hardwood floors and leaking from the air-conditioning unit in the home. The Rays also noticed, due to sagging floors, that furniture was beginning to lean backwards against the walls. After the Rays notified Sadler Homes of the problems they were experiencing, Sadler Homes discovered that a load-bearing beam was erroneously omitted from the construction plans and, thus, the beam was not installed during construction. The Rays also learned that the home they purchased from Sadler Homes had been "stretched" from the construction plans, meaning the home was somewhat wider and longer and had more square footage than specified in the construction plans.

Sadler Homes attempted to correct the problems by installing beams, among other attempted repairs; however, the Rays began to experience additional problems, such as cracks in the drywall and tiles in the bathrooms, following the attempted repairs. After attempting several repairs, Sadler Homes refused to perform any more repairs on the home.

On March 9, 2007, the Rays filed suit against Sadler Homes for breach of contract, breach of warranty, and violations of the Tennessee Consumer Protection Act. A two-day bench trial was held. During the trial, the Rays testified to the numerous problems with the residence. Dan Ray testified that he purchased the home for $450,000 and that he believed that to be the value of the home at the time of the sale. He testified in detail regarding the multitude of problems with the home including hollow spots in the wood floors, cracked tiles, leaking windows, and floors that were not level. He testified that some of the problems were corrected by Sadler Homes, but that after some of the corrective work, the areas were worse. For example, in an upstairs area of the residence where the floor was not level, seams in the carpet were cut. Another example was the holes drilled in the hardwood to reglue the floor to the concrete beneath in an attempt to correct the hollow spots in the floor. Mr. Ray also testified that at the direction of Sean Sadler, he obtained two estimates for replacing the hardwood floors, but Sean Sadler refused to pay for the repairs.[1] Detra Ray also testified regarding the continued problems with the home and the attempts by Sadler Homes to fix them.

---

[1]During his testimony, Sean Sadler disputed that he had instructed Dan Ray to obtain any estimates.

The Rays presented the testimony of Philip Warren, a real estate broker, who was qualified as an expert in real estate market analysis. Mr. Warren testified that he estimated the value of the home at between $80 to $85 a square foot, placing the value of the home between $300,00 and $360,000. Mr. Warren also stated that some of the continuing problems with the home might discourage someone from buying the residence. Both Sean Sadler and Rhonda Sadler were called to the stand by Plaintiffs as adverse witnesses to testify in their case in chief. Sean Sadler testified that he attempted to correct the problems in the home, but he admitted that following the installation of the load-bearing beam, the floors in the home were still not level. Sean Sadler also stated that he believed the issues in the home were "minor" and that the Rays were never going to be satisfied, which is one of the reasons he refused to attempt further repairs to the home. Mr. Sadler also testified that he believed some of the repairs made to the home were not covered by the warranty, but were performed in order to appease the Rays. During the Plaintiffs' case in chief, the parties and the trial judge went to the residence to examine the home. For its part, Sadler Homes presented no proof at trial.

On June 23, 2011, the trial court entered its order finding a breach of contract, breach of warranty, and a knowing violation of the TCPA based upon evidence that the house was "built by an experienced contractor who stretched the house and left out a load-bearing beam." The trial court found that there were damages to the home and awarded $90,000 in damages for the diminution in value and an additional award of attorney's fees pursuant to the TCPA.[2] Sadler Homes filed a timely appeal.

**ANALYSIS**

Sadler Homes raises several issues. First, it argues that the trial court erred in finding that Plaintiffs proved causation in fact without the testimony of an expert witness. Second, it argues that the trial court applied an incorrect measure of damages and that even if the trial court applied the correct measure of damages that the proof preponderated against the trial court's finding that the amount of compensatory damages was $90,000. Third, Sadler Homes argues that the trial court erred in finding a violation of the Tennessee Consumer Protection Act and awarding attorney's fees pursuant to the Act. We shall address each issue in turn.

I. CAUSATION UNDER THE BREACH OF CONTRACT & BREACH OF WARRANTY CLAIMS

Sadler Homes contends that the trial court erred in determining that Plaintiffs did not need an expert witness to prove causation in their claims for breach of warranty and breach

---

[2]The amount of attorney's fees has not yet been determined.

of contract. Further, it asserts the Rays presented no proof that Sadler Homes's work in the construction of the home fell below the applicable standards for a licensed contractor.

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id.*; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness, and "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

The trial court found that the Plaintiffs proved by a preponderance of the evidence a breach of contract and a breach of the implied and express warranties regarding habitability. While not specified in its order, in its ruling from the bench, the court specifically credited the testimony of Dan Ray regarding the state of the home before and after the repairs attempted by Sadler Homes to correct for the omission of the load-bearing beam. At trial, Mr. Ray testified that the floors were slanted and the furniture leaned against the walls in his home, which led to the discovery that a load-bearing beam was omitted during construction of the home. Immediately following the installation of the beams to correct the problem, which required cutting open the ceiling and using floor jacks, the Rays noticed new cracks in the home. Further, Dan Ray testified that the floor never returned to an even level, a fact which Sean Sadler admitted himself during his testimony. The Rays presented numerous photographs of the many defects with the home including the uneven floors, cracked tiles and walls, and leaking windows. Further, the trial judge himself visited the residence and witnessed the defects, noting the "give and take" of the hardwood floors where places continued to pull away from the concrete and the holes that were drilled into the floor in an attempt to correct the problem.

"Litigants may prove any material fact by direct or circumstantial evidence or a combination of both direct and circumstantial evidence." *State v. Phillips*, 138 S.W.3d 224, 230-31 (Tenn. Ct. App. 2003) (citing *Browder v. Pettigrew,* 541 S.W.2d 402, 405 (Tenn. 1976); *Law v. Louisville & Nashville R.R.*, 170 S.W.2d 360, 363 (Tenn. 1943); *Hollingsworth v. Queen Carpet, Inc.*, 827 S.W.2d 306, 309 (Tenn. Ct. App.1991)). In civil cases, litigants

may carry their burden of proof using either direct or circumstantial evidence. *Id*. (citing *Bryan v. Aetna Life Ins. Co.*, 130 S.W.2d 85, 88 (Tenn. 1939); *Brown v. Daly*, 83 S.W.3d 153, 160 (Tenn. Ct. App. 2001); *Aetna Cas. & Sur. Co. v. Parton*, 609 S.W.2d 518, 520 (Tenn. Ct. App.1980)). "In fact, litigants may prove their claim or defense entirely with circumstantial evidence because there are situations in which circumstantial evidence may be more convincing than direct evidence." *Id*. (citing *Estate of Brock ex rel. Yadon v. Rist*, 63 S.W.3d 729, 731 (Tenn. Ct. App. 2001)). As this court noted in *German v. Nichopolous*, there are some instances of negligence which are "as plain as a fly floating in a bowl of buttermilk," in which case expert testimony is not required. *German*, 577 S.W.2d 197, 202-03 (Tenn. Ct. App. 1978); *see also Murphy v. Schwartz*, 739 S.W.2d 777, 778-79 (Tenn. Ct. App. 1986).

Based upon our review of the record, the evidence does not preponderate against the trial court's findings that Sadler Homes breached the contract and the express and implied warranties contained therein. In fact, the evidence clearly demonstrated the numerous problems with the residence, many of which remain. Even those defects that were repaired left lasting scars in the form of holes in the hardwood floors and uneven floors. Thus, we affirm the trial court's finding as to Plaintiffs' breach of the contract and breach of the warranty claims.[3]

## II. DAMAGES

Sadler Homes contends that the trial court erred by awarding damages based upon the diminution in value measure of damages instead of the cost of repair measure of damages stemming from its breach of contract and breach of warranty. The trial court determined that $90,000 was an appropriate award of damages for the diminution in value to the home.

The choice of the proper measure of damages is a question of law to be decided by the court. *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998). In reviewing the trial court's selection of a damages measure, this court is reviewing a decision of law and therefore our review is de novo with no presumption of correctness. *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535 (Tenn. Ct. App. 2000) (citing *Johnson v. Welch*, No. M2002-00790-COA-R3-CV, 2004 WL 239756, at *5 (Tenn. Ct. App. Feb. 9, 2004); *Crowder Constr. Group, LLC v. Holland*, No. M2002-01840-COA-R3-CV, 2003 WL 22146124, at *2 (Tenn. Ct. App. Sept. 18, 2003)).

---

[3]Sadler Homes also asserts that the trial court erred by excluding testimony regarding the residential property disclosure form and asserts that its failure to provide the disclosure was waived by closing the transaction. Although the trial court found that Sadler Homes breached the contract by failing to provide the property disclosure form, the court did not award damages stemming from this breach; thus, it is moot.

"Determinations concerning the amount of damages are factually driven." *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998) (citing *Loftis v. Finch*, 491 S.W.2d 370, 377 (Tenn. Ct. App. 1972)). The amount of damages to be awarded in a particular case is a question of fact. *Id*.

"The purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed." *Id*. (quoting *Wilhite v. Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990)). When a contractor fails to perform in a workmanlike manner, generally, the measure of damages will be the cost of repair. *Id*. at 543. However, diminution in value may be used as the measure of damages in certain circumstances, for example, when the cost of repair is disproportionate or the repairs are not feasible. *Id*.

It is important to note that Sadler Homes put on no proof regarding the feasibility of making further repairs or the cost to make such repairs nor did it put on any proof of the diminution in value of the home. Sean Sadler admitted that despite making some repairs to the home, problems persisted, including for example, uneven floors. It is also significant that Sean Sadler finally refused to make further repairs. As the Rays testified, Sean Sadler essentially "threw up his hands." Sean Sadler testified that he felt the Rays were never going to be satisfied with the results of the repairs; thus, he felt justified in discontinuing any remedial efforts. Based upon the foregoing and the other proof in the record, it is fair to conclude that Sean Sadler and the Rays believed the problems with the home could not be repaired, at least not for a reasonable cost, and that further repairs may cause new and different problems.

As for the diminution in value of the home, Dan Ray testified that he purchased the residence from Sadler Homes for $450,000, and that he believed this to be the value of the home at the time of purchase. He then testified that he believed the current value of his home was between $250,000 and $300,000, between $150,000 and $200,000 less than what it was worth before the problems developed. "It is well settled under the law in this state that an owner of property is competent to testify as to the value of such property." *Stinson v. Stinson*, 161 S.W.3d 438, 446 (Tenn. Ct. App. 2004) (citing *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 234 (Tenn. Ct. App.1976)); *see also Whitelaw v. Brooks*, 138 S.W.3d 890, 893 (Tenn. Ct. App. 2003). Therefore, Dan Ray's opinion testimony was competent evidence concerning the diminution in value of the home.

Furthermore, Philip Warren, a real estate broker who was qualified as an expert in real estate market analysis, testified that he estimated the value of the home at between $80 to $85 a square foot, placing the value of the home between $300,000 and $360,000. Sadler Homes did not present any evidence to challenge the reasonableness of Mr. Warren's valuation

testimony. The trial court was obviously persuaded by Mr. Warren's testimony because the $85 per square foot value, which computes to $360,000, was $90,000 less than the purchase price of the home and the court awarded $90,000 in damages for diminution in value to the home.

Based upon the unique facts of this case and the failure of Sadler Homes to introduce competent evidence to show that the deficiencies in the home could be repaired without compounding the problems, and at a price less than the diminution in value, we affirm the trial court's determination that diminution in value was the appropriate measure of damages. Further, the evidence does not preponderate against the trial court's determination that $90,000 was the appropriate award.

### III. VIOLATION OF THE TCPA & ATTORNEY'S FEES

Sadler Homes contends that the trial court erred in finding a violation of the Tennessee Consumer Protection Act and awarding attorney's fees pursuant to the Act.

The trial court found that Sadler Homes violated the "catch-all provision" of the Act set forth in section (27) of Tennessee Code Annotated § 47-18-104(b) (2010), which makes it a violation of the act for "[engaging in any other act or practice which is deceptive to the consumer or to any other person." Although it is not entirely clear, it appears that the deceptive act was the omission of the load-bearing beam and the fact the home was "stretched" from the original construction plan.

To recover damages under the TCPA, a plaintiff must prove: "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity or thing of value wherever situated...." *Tucker v. Sierra Builders,* 180 S.W.3d 109, 115 (Tenn. Ct. App. 2003) (citing Tenn. Code Ann. § 47-18-109(a)(1)). The key terms "unfair" and "deceptive" are not defined by the TCPA. Therefore, "the standards to be used in determining whether a representation is 'unfair' or 'deceptive' under the TCPA are legal matters to be decided by the courts." *Id*. at 116. "However, whether a specific representation in a particular case is 'unfair' or 'deceptive' is a question of fact." *Id.* (citing *Davidson v. General Motors Corp.*, 786 N.E.2d 845, 851 (Mass. App. Ct. 2003)). This court reviews questions of fact de novo with a presumption of correctness. Tenn. R. App. P. 13(d); *Rawlings*, 78 S.W.3d at 296.

Although a lay person would reasonably assume that it is improper to "stretch" a house from the construction plan, there is no competent evidence in the record to establish that the "stretching" of the home caused any of the problems the Rays experienced or that the stretching of the home deceived the Rays for which there were damages.

As for the load-bearing beam that Sean Sadler admitted should have been installed during construction, the beam was omitted from the construction plans Sadler Homes purchased in order to construct the home. As Sean Sadler explained, the construction plans were purchased from a third-party and he was unaware of the omission of the beam until the Rays contacted him regarding the problems with the home. He further testified that the home passed all building inspections. When it was discovered that the beam was omitted, Sadler Homes took immediate action to install a load-bearing beam. For these reasons, we find the evidence preponderates against the trial court's finding that Sadler Homes engaged in an unfair or deceptive act by failing to install a beam during construction that was omitted from the construction plans purchased by Sadler Homes.

Accordingly, we reverse the trial court's finding that Sadler Homes violated the TCPA and we vacate the award of attorney's fees pursuant to the Act.

## IN CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with one-half of the costs of appeal assessed against the appellants and one-half against the appellee.

_____
FRANK G. CLEMENT, JR., JUDGE