IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2022 Session

## STATE OF TENNESSEE v. $133,429 IN U.S. CURRENCY SEIZED FROM JONI ASSEFA KILENTON ET AL.

**Appeal from the Circuit Court for Fayette County**
No. 21-CV-5          J. Weber McCraw, Judge
_____

**No. W2021-01005-COA-R3-CV**
_____

In this seizure and forfeiture action, we do not reach the substantive issues because the order granting the forfeiture does not comply with the requirements of Tennessee Rule of Civil Procedure 58 for entry of judgments.  Nonetheless, we exercise our discretion under Tennessee Rule of Appellate Procedure 2 to take jurisdiction of the appeal for the limited purpose of instructing the trial court to enter an order on remand that not only complies with Rule 58, but also makes sufficient findings to enable this Court to make a meaningful review as required under Tennessee Rule of Civil Procedure 52.01.  Vacated and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Vacated and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Coleman W. Garrett and Philip Logan Wyatt, Memphis, Tennessee, for the appellant, Joni Assefa Kilenton.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Samantha L. Simpson, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

On December 22, 2020, West Tennessee Violent Crime and Drug Task Force Agent Brent Hill conducted a traffic stop on a GMC Yukon with an Arizona license plate.  As set out in Agent Hill's affidavit in support of the forfeiture warrant:

Agent Hill was traveling west on Interstate 40 at mile marker 42 in Fayette County, Tennessee when he observed a silver GMC Yukon XL displaying Arizona registration plate of MYY2746 transition from the fast lane to the slow lane in front of a semi pulling a trailer. As Agent Hill approached the vehicle he conducted a registration check of the vehicle and discovered that the vehicle registration expired in May of 2020.

Agent Hill conducted a traffic stop on the vehicle at mile marker 38. Upon making contact with the driver[,] Agent Hill asked the driver for his license at which time he was presented with a State of Virginia driver's license that displayed the name Haussam Amir Ahmed Mohmed Amir. Agent Hill noticed that while he was speaking with the driver that the front seat passenger appeared to have difficulty controlling his breathing pattern. He was breathing at a rapid rate and what appeared to be shallow breaths as though he had just finished engaging in physical exercise. Agent Hill also noticed that the front seat passenger's stomach was moving to the rhythm of a heartbeat. When Agent Hill asked for the vehicle registration the driver advised that the vehicle was a rental and provided the appropriate paperwork. Agent Hill asked Amir to step to the rear of the vehicle so that he could explain to him the reason for the traffic stop and to complete the enforcement action. Amir complied and stepped to the rear of the stopped vehicle.

Once at the rear [of the stopped vehicle] Agent Hill explained to Amir that the vehicle registration was expired and he apologized and again explained that the vehicle was a rental. Agent Hill invited Amir to have a seat in the front passenger seat of his patrol vehicle while he conducted the enforcement action. Amir complied and sat in the front seat of Agent Hill's patrol vehicle. Agent Hill conducted a driver's license check on Amir and engaged Amir in general conversation about his travel while waiting on the returned request. Amir said that he was traveling from Virginia to Los Angeles for the holidays and further explained that he once lived there and was going to visit with old friends and then going to return back to the State of Virginia. After reviewing several possible wanted persons with the same or similar name and date of birth Agent Hill reviewed the rental agreement that was provided to him by Amir. Agent Hill noticed that the vehicle was rented on December 3rd, 2020 in Alexandria, VA and was scheduled to be returned back on January 3rd, 2020 at the same location to Saba Ayand. Agent Hill asked Amir what the name of his front seat passenger was and he said that his name was Joni. Agent Hill asked Amir who rented the vehicle and he told Agent Hill that his friend did but was not present in the vehicle. Agent Hill asked why she would pay $2,483.29 to rent a vehicle and not travel in that vehicle. Amir said that she was going to fly to Los Angeles and he along with Joni were going to meet her there.

Agent Hill asked Amir what Joni's last name was and he said that he did not know his last name and that Joni was actually a friend of his friend.

Amir further said that he picked Joni up in a parking lot and that he did have a suit case. Agent Hill asked Amir if he had brought any luggage with him and he replied that he did not other than a back pack but said that he did not bring any clothes with him just a jacket and a few hygiene items. Agent Hill asked Amir what [] property was inside the vehicle and if that property belonged to him. Amir said that he had several cases of Mediterranean beer that is not available in Los Angeles. Agent Hill then asked Amir a series of questions that he asks on all traffic stops [where] he suspects criminal activity being conducted. Agent Hill [] asked Amir to simply reply yes or no to the questions being asked to establish a baseline of behavior. Amir said that he understood. Agent Hill asked Amir if he was in possession of any marijuana. Amir replied no. Agent Hill asked if there was any cocaine inside the vehicle and Amir replied no. Agent Hill then asked about methamphetamine and heroin Amir replied no to both. Agent Hill then asked Amir if there were any large amounts of U.S. Currency $10,000 or more and Amir went into a long explanation saying "me no, for me no I have $300 dollars but for me no." Agent Hill then asked if any large amount of money was located inside of the vehicle would that money belong to him and he again replied no. Agent Hill asked Amir for consent to search the vehicle and all its contents. Amir gave Agent Hill consent.

Based on Agent Hill's training and experience he knows that Los Angeles is considered a source city for Drug Trafficking Organizations and found the travel itinerary that Amir had told him was suspicious based on the totality of the circumstances. Agent Hill then returned to the stopped vehicle and made contact with the front seat passenger. Agent Hill asked him if he had his identification on him and he presented Agent Hill with a Washington, D.C. [ID] that displayed the name of Joni Assefa Kilenton. Agent Hill asked Kilenton where he was traveling to and he advised he was going to Los Angeles. When Agent Hill asked Kilenton what his reason for traveling to Los Angeles was and Kilenton replied "we just opened a transportation business there." Agent Hill asked Kilenton to exit the vehicle. Agent Hill asked Kilenton if he had any weapons on his person and said that he did not and gave Agent Hill consent to pat his pockets. While patting his pockets and felt what appeared to be a fold of cash in his cargo pocket. Agent Hill asked him if he had any more money inside the vehicle and he said that he did not. Agent Hill asked Kilenton if he knew of any large amounts of money inside vehicle and Kilenton again said no. Agent Hill then asked Kilenton if any large amounts of money w[ere] found inside the vehicle would it belong to him and again Kilenton [] said no. Kilenton was asked to step to the front of Agent Hill's patrol vehicle while a search was conducted of the vehicle.

Upon arrival of Agent Ramsuer and Burton a search was conducted. Agent Burton located a brown cardboard box laying in the rear third row seat floorboard of the Yukon with no label or writing on the box. Agent Burton

opened the box and discovered a small rectangular shaped object wrapped in gold foil wrapping paper. Agent Burton handed the box to Agent Hill and you could obviously tell by feel that the rectangular shaped package was U.S. Currency. Agent Hill unwrapped the package and located five separate bundles of U.S. Currency being held together by rubber bands.

Both Amir and Kilenton were placed in the back seat of Agent Ramsuer and Agent Burton's patrol car. Agents continued to search the vehicle. Agent Hill opened the rear door of the Yukon XL and began searching the rear cargo area. Agent Hill moved two beer case boxes and located two additional brown cardboard boxes that did not match the beer boxes. Agent Hill opened one box and located 21 pint sized brown bottles that displayed the words of Promethazine with Codeine which is a schedule V narcotic/controlled substance in the State of Tennessee. These bottles were for pharmacy use only to mix smaller bottles for prescriptions. Agent Hill then opened the second cardboard box and located a large amount of U.S. Currency with several bundles being held together with rubber bands. Agent Burton did run his narcotics detector canine on the currency and received a positive alert to the odor of narcotics. Agent Hill contacted Special Agent in Charge Darryl Harrison and requested that he come to the scene. Agent Hill removed the U.S. Currency and Promethazine inside the front seat of his patrol vehicle with his body camera recording the Currency and narcotics. Upon arrival of SAC Harrison he was briefed of the findings and both Amir and Kilenton were transported to the West Tennessee Drug Task Force East office.

Once at the East Office the U.S. Currency was removed from Agent Hill's patrol vehicle and released to SAC Harrison who placed the currency inside of evidence bags and secured it inside the vault. Deputy Director conducted interviews on Amir and Kilenton. Amir was read and signed the Miranda Warning. Amir stated that his initial statements were partially true that he did used to live in Las Angeles and he is going to see some friends while he is there but he also admitted that he is employed by Kilenton as a driver for his transportation company. Amir said that he received a phone call from Kilenton who told him that he needed to go to Los Angeles and that he would pay him $20 an hour to rotate out driving with him and viewed it as a free trip to see friends. Amir said that when he arrived at the location Kilenton told him to be at then he was told they were driving the Yukon XL and that it was already loaded with boxes prior to his arrival. Amir said that he had no knowledge of the currency located in the vehicle and signed a disclaimer of currency form stating that the currency was not his and he had no knowledge of it.

Kilenton was also read the Miranda Warning and said that he understood and signed the form. Kilenton said that he owns a transport business in Virginia and had recently opened a transportation business in Los

Angeles and that he was traveling there to check out his new office and see what remodeling needs to be done. Kilenton said that he was only responsible for $105,000.00 that was located inside the vehicle and said that he brought the money with him because he had been told that banks were closed due to the coronavirus. Kilenton was asked if he withdrew the money from the bank and he said that he did not that he kept the currency at his house and just decided to bring it with him. Kilenton said that he only has about $10,000.00 in the bank and only has one bank account. When Kilenton was asked how much his transportation services had made in the last two years he said that he had only made about $80 for the past two years and that he has eleven limos that he must maintain with all of them not being paid for. When asked how he obtained the currency he said that it was from tips of his customers. Kilenton was asked about the foil wrapped package of U.S. Currency located inside of his vehicle and the Promethazine with Codeine and Kilenton said that he was unaware of those items being inside of his vehicle but that he was transporting two packages for a customer who he only knows as E BIG BOY and that he was supposed to contact [him] when he arrived to Los Angeles to find out where the packages needed to be delivered. Kilenton signed a disclaimer stating that he had no knowledge of any currency located inside his vehicle other than $105,000.00. Kilenton could not explain why both cardboard boxes that contained currency were bundled the same way and held together with rubber bands. Kilenton and Amir were both given notices of seizure and explained the steps to follow to file a claim on the currency.

On December 23rd 2020, SAC Harrison transported the money to the West Tennessee Drug Task Force main office in Shelby County and to the Trustees Office for an official count and the total of U.S. Currency was $133,429.00. . . .

On March 2, 2021, Appellee State of Tennessee ("State") filed a petition for forfeiture of the $133,429.00 in U.S. Currency pursuant to Tennessee Code Annotated section 39-11-701, *et seq.* The State attached, to its petition, the forfeiture warrant, Agent Hill's affidavit supporting the warrant, notices of seizure, and disclaimers of ownership of currency. On April 23, 2021, Appellant Joni Assefa Kilenton filed a response to the forfeiture petition and request for return of the seized currency. Therein, Mr. Kilenton affirmatively alleged that he had a legitimate ownership interest in $105,000.00 of the seized currency, and that the currency "was derived from legitimate, legal business enterprises." Mr. Kilenton further alleged that the seizure "was the result[] of an unlawful traffic stop and subsequent unreasonable, warrantless, illegal search, in violation of [his] state and federal constitutional rights." On the same day, Mr. Kilenton filed a motion for the return of the seized currency and motion to suppress the results of the search. The State opposed Appellant's motions.

During discovery, Mr. Kilenton maintained that the seized funds were derived from his business, Joni's Limos and Transpo, LLC. In response to the State's discovery requests, Mr. Kilenton tendered bank statements for accounts held in the name of Joni's Limos and Transpo, a certificate of good standing issued by Department of Consumer and Regulatory Affairs for the District of Columbia, and various documents evidencing property owned and insured by Joni's Limos and Transpo, LLC.

On August 16, 2021, the trial court held a hearing on the State's forfeiture petition and the Appellant's motion to suppress. After hearing testimony from the officers who conducted the traffic stop, the trial court denied Mr. Kilenton's motion to suppress by order of August 25, 2021. On the same day, the trial court entered a separate order, granting the State's forfeiture petition. Appellant appeals and raises the following issues for review:

1. Whether the trial court erred in denying Appellant's motion to suppress.
2. Whether there is substantial and material evidence in the record to support the trial court's determination that the seized funds were derived from criminal activity and should therefore be forfeited to the State.

We do not reach the substantive issues due to two procedural shortfalls concerning the trial court's order granting the forfeiture. In its entirety, the order provides:

> It appears to the Court that $133,429 was seized after being found in a vehicle after a traffic stop. The money was found wrapped and boxed in the vehicle along with illegal drugs. There were inconsistent statements made to law enforcement by the occupants of the vehicle and the money was seized.
>
> Mr. Kilenton claims $10[5],000 of the cash was his property earned from his business and should be returned. Mr. Kilenton was a productive entrepreneur and established a business as a limousine driver and transport business. He testified that he was successful in his business, and that he generated substantial income from this business. However, the Court finds some credibility issues in his testimony.
>
> [Mr. Kilenton] testified that he filed an IRS form 1099 on each employee based upon the actual hours worked by each employee and he introduced those documents into evidence. The 1099's represented the income earned by each employee based upon the hours worked. Oddly, the Court notes that it is unusual that each 1099 issued resulted in a round number for the income of each employee. Further, [Mr. Kilenton] testified that he had to transport cash because the banks were closed in California during December 2020 because of COVID which the Court finds to be inaccurate.
>
> Further, [Mr. Kilenton] testified that he did not have a bank in California yet he produced bank statements in these pleadings with Wells Fargo & Chase Financial institutions which operate on both the east coast and west coast.

Further, Mr. Kilenton testified about his bank accounts, his income and his tax returns. The Court noted oddities in some of the documents and, there were considerable differences and inconsistencies between his testimony and the documents introduced into evidence. He testified that he had no income other than listed on his bank statements, yet he could not point to a bank statement where a withdrawal of cash to accumulate the large amount of cash seized by the State can be traced. Upon further reflection and questioning, Mr. Kilenton then changed his testimony to say that the seized money never went into a bank account and a portion of his income was cash and not on his income tax return. The Court concludes that Mr. Kilenton is not a credible witness.

The Court finds that the procedural and timelines as set out in T.C.A. § 39-11-701, *et seq*. were properly adhered to by the State. The Court concludes and finds Mr. Kilenton's sources of income and documentation of income and expenses to be unreliable. The State of Tennessee has carried its burden of proof, the proceeds were derived from criminal activity and the $133,429 shall be forfeited to the State.

ORDERED this 16th day of August, 2021.

<u>    s/ J. Weber McCraw    </u>

Turning to the first procedural issue with the foregoing order, Tennessee Rule of Civil Procedure 58 provides, in relevant part:

Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:

(1) the signatures of the judge and all parties or counsel, or

(2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or

(3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.

As presented in the appellate record, the trial court's August 25, 2021 "Order Granting Forfeiture of Funds" contains only the judge's signature. In the absence of: (1) "the signatures of all parties or counsel," Tenn. R. Civ. P. 58(1); "the signature of one party or counsel with a certificate of counsel," Tenn. R. Civ. P. 58(2); or (3) "the certificate of the clerk," Tenn. R. Civ. P. 58(3), the entry of the judgment is not effective. Compliance

- 7 -

with Rule 58 is mandatory, *State ex rel. Taylor v. Taylor*, No. W2004-02589-COA-R3-JV, 2006 WL 618291, at *2 (Tenn. Ct. App. Mar.13, 2006) (quoting *Gordon v. Gordon*, No. 03A01-9702-CV-00054, 1997 WL 304114, at *1 (Tenn. Ct. App. June 5, 1997)), and "[t]he failure to adhere to the requirements set forth in Rule 58 prevents a court's order or judgment from becoming effective." *Blackburn v. Blackburn*, 270 S.W.3d 42, 49 (Tenn. 2008) (citing *DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 509 (Tenn. Ct. App. 2005)). This means that an order that does not comply with Rule 58 "is not a final judgment and is ineffective as the basis for any action for which a final judgment is a condition precedent." *Citizens Bank of Blount County v. Myers*, No. 03A01-9111-CH-422, 1992 WL 60883, at *3 (Tenn. Ct. App. Mar.30, 1992) (holding that an execution and garnishment was improper when based on a judgment that did not comply with Rule 58); *see also State ex rel. Taylor*, No. W2004-02589-COA-R3-JV, 2006 WL 618291, *3 (Tenn. Ct. App. March 13, 2006) (dismissing the appeal for lack of a final order when the order appealed from did not comply with Rule 58). Accordingly, if the order appealed is not a final judgment, this Court does not have subject matter jurisdiction to adjudicate the appeal. Tenn. R. App. P. 3(a) ("In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right"); *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003).

Nonetheless, in the interest of judicial economy, we exercise our discretion, under Tennessee Rule of Appellate Procedure 2 ("For good cause, including the interest of expediting decision upon any matter, the . . . Court of Appeals . . . may suspend the requirements or provisions of any of these rules in a particular case . . . on its motion and may order proceedings in accordance with its discretion . . . ."), for the limited purpose of identifying a second procedural deficiency with the trial court's forfeiture order.

As set out in context above, the trial court held that the State "carried its burden of proof [to show that] the [seized] proceeds were derived from criminal activity and the $133,429 shall be forfeited to the State." However, the trial court does not sufficiently explain how it arrived at this legal conclusion. Under Tennessee Code Annotated section 39-12-206(b), "[a]ll property, real or personal, including money, used in the course of, intended for use in the course of, derived from, or realized through, conduct in violation of [Title 39 Criminal Offenses] is subject to civil forfeiture to the state." As set out in context above, the trial court's holding was based on the following findings: (1) "inconsistent statements made to law enforcement by the occupants of the vehicle"; (2) "some credibility issues in [Mr. Kilenton's] testimony; (3) "each [of Mr. Kilenton's employee's] 1099 [forms] resulted in a round number for the income of each employee"; (4) Mr. Kilenton's testimony "that he had to transport cash because the banks were closed in California during December 2020 because of COVID which the Court f[ound] to be inaccurate"; (5) Mr. Kilenton's testimony "that he did not have a bank in California yet he produced bank statements in these pleadings with Wells Fargo & Chase Financial institutions which operate on both the east coast and west coast"; (6) "oddities in some of the documents and [] considerable differences and inconsistencies between [Mr. Kilenton's] testimony and the

- 8 -

documents introduced into evidence"; (7) Mr. Kilenton's inability to "point to a bank statement where a withdrawal of cash to accumulate the large amount of cash seized by the State can be traced"; (8) Mr. Kilenton's "changed" testimony "that the seized money never went into a bank account and a portion of his income was cash and not on his income tax return"; and (9) the "Court['s] conclu[sion] that Mr. Kilenton [was] not a credible witness." From our review, nothing in the foregoing list involves criminal activity on the part of Mr. Kilenton so as to justify forfeiture of the currency under Tennessee Code Annotated section 39-12-206(b). At least, the trial court has not linked any of the foregoing findings to such criminal activity. Furthermore, it appears that the trial court placed the primary burden of proof on Mr. Kilenton as the trial court does not list or discuss any specific evidence presented by the State in furtherance of its forfeiture petition, other than noting the following: "It appears to the Court that $133,429 was seized after being found in a vehicle after a traffic stop. The money was found wrapped and boxed in the vehicle along with illegal drugs." While the State may certainly prove its case by circumstantial evidence,[1] what is missing from the trial court's order is a link connecting the facts to any criminal activity, on Mr. Kilenton's part, that was the source of the seized funds. Tennessee Rule of Civil Procedure 52.01 requires that, "[i]n all actions tried upon the facts without a jury, the court **shall find the facts specially** and shall state separately its conclusions of law and direct the entry of the appropriate judgment" (emphasis added). Under Rule 52.01, a trial court's order should indicate why and how it reached a decision and which factual findings led the court to rule as it did. *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *4 (Tenn. Ct. App. Feb. 22, 2013). If we cannot determine from the trial court's written order what legal standard it applied or what reasoning it employed, then the trial court has not complied with Rule 52.01. *See Ray v. Ray*, No. M2013-01828-COA-R3-CV, 2014 WL 5481122, at *16 (Tenn. Ct. App. Oct. 28, 2014). The reviewing court must be able to ascertain "the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2579, at 328 (3d ed. 2005)). "Without such findings and conclusions, this Court is left to wonder on what basis the trial court reached its ultimate decision." *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004). That is precisely the scenario we face in this case. In the absence of any finding specifying how the seized currency was "used in the course of,

---

[1] Litigants may prove any material fact by direct or circumstantial evidence or a combination of both direct and circumstantial evidence. *Browder v. Pettigrew*, 541 S.W.2d 402, 405 (Tenn. 1976); *Law v. Louisville & Nashville R.R.*, 170 S.W.2d 360, 363 (Tenn. 1943) (Chambliss, J., concurring); *Hollingsworth v. Queen Carpet, Inc.*, 827 S.W.2d 306, 309 (Tenn. Ct. App.1991). Accordingly, in civil cases, litigants may carry their burden of proof using either direct or circumstantial evidence. *Bryan v. Aetna Life Ins. Co.*, 130 S.W.2d 85, 88 (Tenn. 1939); *Brown v. Daly*, 83 S.W.3d 153, 160 (Tenn. Ct. App. 2001); *Aetna Cas. & Sur. Co. v. Parton*, 609 S.W.2d 518, 520 (Tenn. Ct. App. 1980). In fact, litigants may prove their claim or defense entirely with circumstantial evidence because there are situations in which circumstantial evidence may be more convincing than direct evidence. *Estate of Brock ex rel. Yadon v. Rist*, 63 S.W.3d 729, 731 (Tenn. Ct. App. 2001).

intended for use in the course of, derived from, or realized through" some violation of the criminal code on the part of Mr. Kilenton, the trial court's order is insufficient to provide a basis for this Court's review of the propriety of the forfeiture. On remand, the trial court should comply with Tennessee Rule of Civil Procedure 58 for the entry of judgments, and should also comply with Tennessee Rule of Civil Procedure 52.01 by making sufficient factual findings to support its legal conclusion that the State met its burden of proof in this case to show, by a preponderance of the evidence, that the seized currency was derived from Mr. Kilenton's engagement in some illegal activity.

For the foregoing reasons, we vacate the trial court's order granting the State's petition for forfeiture. We pretermit the issue concerning whether the trial court erred in denying Mr. Kilenton's motion to suppress pending the trial court's compliance with the mandates set out in this opinion. To that end, the trial court is not precluded from reopening proof on remand. Costs of the appeal are assessed to the Appellee, State of Tennessee.


        s/ Kenny Armstrong
        KENNY ARMSTRONG, JUDGE